[Crim. No. 2025. First Appellate District, Division Two.—November 2, 1938.]

THE PEOPLE, Respondent, v. HARRY BRODY, Appellant.

Melvin M. Belli for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The defendant was accused by the district attorney in an information with the crime of grand theft. In the information a prior conviction was also alleged. The defendant entered a plea of not guilty and denied that he had suffered the prior conviction. The trial was had before the trial court sitting with a jury. During the trial the alleged prior conviction was withdrawn. After the cause was submitted to it the jury returned a verdict finding the defendant guilty of grand theft as charged in the information. The defendant made a motion for a new trial, his motion was denied, and he appealed from the order denying him a new trial and from the judgment.

In December of 1936 defendant knew neither Harris nor Shill, but all had a mutual acquaintance in Anne De Britz, a dressmaker living in San Francisco. There was nothing either ominous or propitious in the first meeting between Harris, Shill and Brody. Anne De Britz, called for the People, testified that it was a casual meeting. There was no proof that any motive of defendant actuated the meeting and Anne De Britz so declared.

These four soon became friends, eating together, visiting the same places at the same times, and finally they found a common topic for conversation—"bingo". Soon all were talking about how much money one could make in running a bingo game establishment. Harris knew that defendant was not connected with any bingo games. In fact, did not know very much about how bingo was run nor how "the big money" was made in it. He knew that bingo games were in opera-

tion only in Reno and Los Angeles. Throughout the entire testimony there is the definite intimation by Harris and Shill that they knew it was illegal to operate bingo games. Brazenly they sought high profits from a partnership the *res* of which was an illegitimate enterprise. If public officers were to be bribed to allow the game to run they were willing if assured the profits.

Defendant, after all four had talked a great deal about bingo, stated if Harris and Shill would each put five thousand dollars into a bingo venture, with other funds to be raised, he could start an establishment. Within a short time thereafter both gave checks to defendant for five thousand dollars each. Shill's check was returned unpaid because of insufficient funds.

Harris' check did clear and this money Brody deposited in a San Jose bank under the name of Harry Frank. Defendant testified he used the name Frank to protect the deposit of the money, as he, Brody, had an unsatisfied judgment against him. The People's witness, Eugene Aureguy, corroborated this testimony of defendant. The reason the deposit was placed in a San Jose bank was that the first bingo venture was to start in Santa Clara County.

When Harris gave defendant his check for five thousand dollars he stated he trusted him implicitly. He had not inquired where the defendant lived, nor did he ask what business he was in nor if he had an office.

Harris testified he did not know who was to handle the cash, who was to keep the books, or even how the profits were to be divided. He did know that he wanted to invest five thousand dollars in bingo, and was much more interested in making the "big money from bingo" than he was in its legality. Definitely he intended, as did all four principal actors for that matter, that the venture was a partnership. There was to be a division of losses, profits, share in management and business policy. Shill testified that it was a partnership and that it was a great gamble and took lots of money to start.

Immediately after Harris had paid the money to defendant the latter asked People's witness Eugene Aureguy to draw up a contract or agreement for the protection of Harris. Aureguy so did and so testified. Harris, Anne De Britz and

defendant signed the same. It was admitted in evidence as defendant's exhibit.

Subsequent to the starting of the San Jose bank account, defendant drew a large number of checks approximately two thousand dollars. These were for varying amounts and were payable to stores in San Francisco and to individuals. Some of the checks defendant did not remember for what they had been cashed, some were, he testified, definitely for living expenses connected with the partnership venture and some were for ventures not connected with the bingo game. However, he did testify that he journeyed to Los Angeles on a number of occasions and paid three thousand dollars of the five thousand dollars to one Harrison, a regular bingo equipment seller, as a deposit for bingo equipment and also paid two thousand dollars from his own money for the bingo equipment. A photostatic copy of the receipt from E. R. Harrison to Harry Frank was introduced in evidence by defendant to show that he had actually expended five thousand dollars on the bingo venture.

Eugene Aureguy, witness for the People, further corroborated defendant that he, defendant, in furtherance of the partnership made several trips to San Jose with Aureguy, and Aureguy accompanied defendant several times to Los Angeles, where the latter talked to Harrison about the purchase of the equipment; that a lease was negotiated for with Greko, the man whom defendant had mentioned to Harris, that Brody even secured a written option to lease from Greko and Aureguy further testified that he discussed remodeling the premises to fit the needs of a bingo establishment.

Because the attorney-general ruled that a bingo game was illegal no further progress was made with the bingo venture. There was no accounting of the five thousand dollars between the partners but on the 1st day of February, 1938, a little over a year after the partnership was started with the five-thousand-dollar check, Silas Harris swore to a complaint charging Harry Brody with grand theft.

In his opening statement, after stating the facts, the district attorney stated to the jury that in the opinion of the prosecution the defendant was guilty of embezzlement. Later he offered evidence to that effect. He also offered evidence which at least tended to show larceny by trick and device,

the trick and device being certain false representations to the effect that the defendant knew two persons in Santa Clara County with whom he had made arrangements that he and his associates could obtain permission to operate a bingo game in Santa Clara County without interference by the peace officers. In this court the defendant claimed that he was not given a fair and impartial trial and that the evidence was insufficient to support the judgment. The plaintiff replied that the state could not defend certain of the trial court's rulings, actions, and instructions. We have carefully examined the record and we have reached the conclusion that said reply was well founded. ■ The evidence is, as defendant claims, insufficient in law to sustain the judgment. Viewed as a charge of embezzlement the uncontradicted evidence showed that the defendant and his associates were partners. However, it is settled law that a general partner cannot be convicted of embezzling partnership property which comes into his possession or under his control during the course of the partnership business by reason of his being a partner. (*People* v. *Hotz*, 85 Cal. App. 450 [259 Pac. 506] ; *People* v. *Foss*, 7 Cal. (2d) 669 [62 Pac. (2d) 372].) *In re Severin*, 188 Cal. 348 [205 Pac. 101], is closely in point. We quote as follows: "After a preliminary examination upon a complaint charging the petitioner with the crime of embezzlement he was held to answer therefor and committed to the custody of the sheriff. He seeks release on *habeas corpus* on the ground that the order holding him to answer was made without reasonable or probable cause. The evidence taken on the preliminary examination is set forth in the petition. It shows that the petitioner obtained from the complaining witness the sum of six hundred dollars upon representations made by him to said witness that he, the petitioner, had formed a partnership to carry on a certain business and that for that sum of money he would admit the witness as a member of said firm. Apparently the witness delivered to him the money with the intent that it should be applied to that purpose and to pass the title thereto to the firm of which the witness was to become a member. The evidence also tends strongly to show that the representations were wholly false, that no such firm had been formed or was in existence, and that the petitioner, having received the money as above stated, converted it to his own use. It is

extremely doubtful if this establishes the petitioner's guilt of the crime of embezzlement. Perhaps an argument could be framed, based on similar reasoning to that upon which the crime of larceny by trick and device is upheld, which would lead to the conclusion that the petitioner had obtained possession of the money by fraud, and that the title thereto had not passed, notwithstanding the intent of the witness that it should pass. But we are not disposed on this hearing to enter upon this inquiry. We have no cases in this state which would be a precedent for holding that this would constitute embezzlement, or at all events, none of which we are advised. The evidence shows probable cause to believe that the petitioner is guilty of either one or the other of three distinct crimes: (1) Larceny by trick and device, under the reasoning above stated; (2) embezzlement of money obtained by trick and device, under the same reasoning, or (3) obtaining money by false pretenses. Assuming, therefore, that the complaint charging embezzlement is not sustained, it is clear that there was ample cause for holding the petitioner for the commission of a crime." But, in the instant case there was no evidence that the representations made by the defendant were false. It follows that the evidence did not prove that the defendant was guilty of embezzlement nor that he was guilty of obtaining property by trick and device.

The judgment is reversed and the cause is remanded.

Nourse, P. J., and Spence, J., concurred.