[Crim. No. 3946. Fourth Dist., Div. One. May 18, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM A. OEHLER, Defendant and Appellant.

## COUNSEL

Butler & Schroeder and Irwin L. Schroeder for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BROWN (Gerald), P. J.**—William A. Oehler appeals from a probation order, deemed a final judgment, based on his jury-tried conviction on two counts of grand theft.

The grand jury indicted Oehler on three counts of grand theft (Pen.

Code, § 487), one count of forgery (Pen. Code, § 470), and eight counts of violating the Corporate Securities Law (Corp. Code, § 26104, subd. (a)). During Oehler's jury trial the court directed verdicts of acquittal on one of the grand theft counts and on the forgery count. The court also found Oehler not guilty on one of the corporate securities violation charges. The jury acquitted Oehler on all other charges except the two remaining grand theft counts.

Oehler promoted an oil exploration venture in an oil field near Bakersfield. He formed a group of investors which he described as a joint venture. He sold interests in the oil venture to members of this group. The sale of these interests gave rise to the charges Oehler violated the California Corporate Securities Law of which he was acquitted.

Oehler's group entered into a turnkey contract with Kernco Drilling Company calling for an oil well to be drilled to 1,850 feet. At 1,850 feet the well was still dry. The members of the investment group agreed the well should be drilled to a greater depth. Kernco drilled the well to a depth of 2,010 feet. It charged $1,750 for the additional drilling.

The president of Kernco Drilling Compay sent Oehler an invoice for the unpaid $1,750 on May 16, 1966. Two years later, it remained unpaid so Kernco sued Oehler for it and took judgment by default.

In 1966, about the time the additional drilling was completed, Oehler solicited funds from the investment group to pay for the additional drilling. Dr. Sanderson wrote a check in the sum of $320 for his share of the additional cost and gave it to Oehler. Dr. Doud delivered to Oehler his $220 check to pay for Dr. Doud's share of the added drilling costs. There was evidence Oehler converted the proceeds of the Doud and Sanderson checks to his own use. These two checks are the basis of Oehler's grand theft conviction.

The trial court instructed the jury the Corporate Securities Law does not apply to a good faith joint venture agreement. Before acquitting Oehler of the Corporate Securities Law violation, the jury requested further instructions on what constitutes a good faith joint venture. The trial court did not instruct the jury as to what effect a valid joint venture between Oehler and Doctors Sanderson and Doud would have on the two remaining theft counts.

In general, a partner cannot steal from his partnership. (*People* v. *Foss,* 7 Cal.2d 669, 670 [62 P.2d 372].) This rule applies to embezzlement

(*People* v. *Brody*, 29 Cal.App.2d 6, 10 [83 P.2d 952]), and to joint ventures (*People* v. *Theodore*, 121 Cal.App.2d 17, 32 [262 P.2d 630]). The rule has been somewhat disparaged (*People* v. *Pond*, 44 Cal.2d 665, 671 [284 P.2d 793]) and is subject to exceptions (e.g., *People* v. *Jones*, 36 Cal.2d 373, 379-383 [224 P.2d 353]; *People* v. *Cravens*, 79 Cal.App.2d 658, 662-663 [180 P.2d 453]). The exceptions are not established in this case as a matter of law and would present questions for the jury under correct instructions. However, the rule a partner cannot steal from his partnership has not been overruled.

Oehler did not request an instruction that a joint venturer could not be convicted of theft from the joint venture. Because the failure to instruct on the subject removed a major defense from the case, such failure must be considered prejudicial unless Oehler invited the error. The question thus presented is whether the court should have instructed on the joint venture defense on its own motion.

■ The trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence, even though no request is made, but need not instruct on its own motion on specific points developed at the trial (*People* v. *Hood*, 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]). The rule is designed to afford protection against the inadvertence of trial counsel (*People* v. *Wade*, 53 Cal.2d 322, 334 [1 Cal. Rptr. 683, 348 P.2d 116]; *People* v. *Hood, supra*, 1 Cal.3d 444, 449).

■ The general principles of law governing the case are those principles of law commonly or closely and openly connected with the facts of the case before the court (*People* v. *Hood, supra*, 1 Cal.3d 444, 449; *People* v. *Wade, supra*, 53 Cal.2d 322, 334). In *Wade* the court said a trial judge "need not fill in every time a litigant or his counsel fails to discover an abstruse but possible theory of the facts." The question, however, is not whether the point of law is obscure but whether its relation to the facts of the case is obscure. In *Hood*, the court reversed for failure of the trial court to instruct on a proposition of law which was not established as decisional law until after the trial (*People* v. *Hood, supra*, 1 Cal.3d 444, 451).

■ Whether Oehler was a joint venturer with Doctors Doud and Sanderson was subject to evidentiary exposition at the trial and was the subject of instructions to the jury, although not in relation to the theft charges. Under these circumstances, the joint venture defense to theft was closely and openly connected with the facts before the court. (See *People* v. *Hood, supra*, 1 Cal.3d 444, 450.) The court erred in not instructing on the subject on its own motion. The error was prejudicial as it deprived Oehler

of his right to have the jury determine every material issue presented by the evidence. (*People* v. *Hood, supra,* 1 Cal.3d 444, 450.)

Judgment reversed.

Whelan, J., and Ault, J., concurred.