[Crim. No. 10649. First Dist., Div. Four. Feb. 8, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
CHARLES SOBIEK, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Herbert L. Ashby, Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Robert R. Granucci, W. Eric Collins and April P. Kestell, Deputy Attorneys General, for Plaintiff and Appellant.

Goth, Dennis & Aaron and James M. Dennis for Defendant and Respondent.

## Opinion

**BRAY, J.**\*—Appellant appeals from order of the San Mateo County Superior Court granting respondent's motion to quash counts One, Two, Three and Four of an indictment.

### Questions Presented

1. May a partner be guilty of embezzling or stealing partnership property? Yes.

2. Was respondent denied a speedy trial? No.

3. Ruling that a partner may be guilty of grand theft is not violative of article I, section 9, United States Constitution, or of article I, section 16, California Constitution.

By an indictment filed in the San Mateo County Superior Court respondent was indicted for four counts of violation of Penal Code section 487 (grand theft) and one count of violation of Penal Code section 470 (forgery). He moved to quash the indictment. After a hearing, the court granted his motion as to the four counts of grand theft and denied it as to the forgery charge. The People appeal.

The charges arise out of a situation in San Mateo County where a group of 15 friends organized the Empire Investment Club whose purpose was to invest money in second mortgages. Respondent, an insurance and real estate field representative, was elected president. Each member originally invested $100 and paid into the club's fund $25 per month thereafter.

It is unnecessary to detail the various acts of respondent in gradually assuming practically unlimited control of the making of loans and in finally appropriating to his own use considerable sums of the group's money. The evidence on the hearing of the motion under Penal Code section 995 to set aside the indictment clearly and amply shows reasonable cause for holding respondent to answer on all the charges unless, as contended by respondent and found by the court, section 487 cannot apply to a member of a group such as this on the theory that a partner may not steal nor embezzle the property of his partnership.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## 1. Does section 487 apply?[1]

In *People* v. *Brody* (1938) 29 Cal.App.2d 6 [83 P.2d 952], the defendant and his friends contributed money for the purpose of operating bingo games. A partnership was formed for profit-making purposes and an agreement executed. The defendant used some of the funds for his own purposes and was charged with grand theft. The court held (p. 10): "The evidence is, as defendant claims, insufficient *in law* to sustain the judgment. Viewed as a charge of embezzlement the uncontradicted evidence showed that the defendant and his associates were partners. However, it is settled law that a general partner cannot be convicted of embezzling partnership property which comes into his possession or under his control during the course of the partnership business by reason of his being a partner. (*People* v. *Hotz,* 85 Cal.App. 450 [259 Pac. 506]; *People* v. *Foss,* 7 Cal.(2d) 669 [62 Pac.(2d) 372].)" (Italics added.)

It will be noted that the court in *Brody* based its statement that "it is settled law" that a partner could not be convicted of embezzling partnership property on reference to *People* v. *Hotz* (1927) 85 Cal.App. 450 [259 P. 506], and to *People* v. *Foss* (1936) 7 Cal.2d 669 [62 P.2d 372]. In *Hotz,* the court stated that this rule is "well established," relying on *Ex parte Sanders* (1921) 23 Ariz. 20 [201 P. 93, 17 A.L.R. 980, and annotations, p. 982]. *Sanders* was interpreting an Arizona statute. The *Sanders* court stated that embezzlement was purely a statutory offense unknown to the common law and that to determine whether a partner could be convicted for misappropriating funds belonging to the partnership, it was necessary to look to the statute defining the crime. (23 Ariz. at p. 22.) The court in *Sanders* refused to follow *State* v. *Kusnick* (1888) 45 Ohio St. 535 [15 N.E. 481] which held that an owner of shares in a joint-stock banking company, who was also cashier, could be guilty of embezzlement, on the grounds that the Ohio statute on which that decision was based did not contain the requirement that the property be "of another." Instead, the court followed the case of *State* v. *Reddick* (1891) 2 S.D. 124 [48 N.W. 846], which interpreted a statute similar to Arizona's. This statute listed the categories of persons who could be guilty of embezzlement and specifically omitted the category "partners," thus, reasoned the South Dakota court, showing a legislative intent that partners not be subject to this crime.

The California theft statute, Penal Code section 484, contains the requirement that for a felonious stealing the personal property shall be

---

[1]In the discussion under this heading, we assume that the Empire Investment Club is a partnership. The Attorney General's contention to the contrary will hereinafter be discussed.

"of another" but does not contain this requirement for the offense of fraudulently appropriating property which has been entrusted to a defendant. Moreover, there is no listing of the categories of persons who can be guilty of the crime. The statement contained in *People* v. *Hotz, supra,* 85 Cal.App. 450, is not required by the wording of the California statute and indeed the conspicuous omission of the requirement that the property entrusted to the one who fraudulently appropriates it be "of another" in our California statute would seem to require that the state follow the *Kusnick* rule rather than the *Sanders* rule.

█ Penal Code section 506 lists the categories of persons who can be guilty of embezzlement and does not include partners. However, a partner would be included in the category "person otherwise entrusted with or having in his control property for the use of any other person, . . ." This does not require that the property be that of another person but that it be entrusted for the use of another. This would include partnership property entrusted to a partner.

The basic thought behind the decisions sustaining the rule that a partner may not steal partnership property seems to be that as each partner is the ultimate owner of an undivided interest in all the partnership property and as no one can be guilty of stealing or embezzling what belongs to him, a general partner cannot be convicted of embezzling partnership property, i.e., the property must be "of another." This rule, when thus broadly stated, goes further than the simple statutory requirement that the property be "of another." When thus stated, the rule requires that the property be wholly that of another because a part interest by the defendant prevents a conviction. This interpretation extends "of another" to read "wholly of another." Because the California statute, though requiring that the property be "of another" for larceny, does not require that the property be "of another" for embezzlement, it is totally inappropriate to adopt a judicial rule requiring that the embezzled property be wholly of another.

The rule has been the subject of much criticism and even disparagement. In *People* v. *Hotz, supra,* 85 Cal.App. 450, despite stating the *Sanders* rule, the court affirmed the conviction by finding that the arrangement between the defendant and his victim to share both profits and losses from the sale of automobiles was not in fact a partnership, commenting that the essential distinguishing feature of a co-partnership "is the association for the 'purpose of carrying on the business together' [citation], and the agreement to divide profits is not sufficient." (85 Cal.App. at p. 453.)

*People* v. *Foss, supra,* 7 Cal.2d 669, the other authority relied upon in *Hotz,* cited no authority for its statement that the rule was well settled

and, moreover, as the court upheld the conviction, finding that there was no partnership nor was the defendant a partner, the statement is dicta. Likewise, in *People* v. *Pond* (1955) 44 Cal.2d 665, 672 [284 P.2d 793], the rule is stated as dictum as a partnership was not involved. Inasmuch as the statement in these California Supreme Court cases that a partner could not be convicted of embezzling from a partnership is dicta, we are not required to adhere to such statement. (*People* v. *Gregg* (1970) 5 Cal. App.3d 502, 506 [85 Cal.Rptr. 273].)

*People* v. *Brody, supra,* 29 Cal.App.2d 6, basing its decision on the dicta in *People* v. *Hotz, supra,* and *People* v. *Foss, supra,* held that the defendant could not be guilty of embezzling from his partners. The court referred to *In re Severin* (1922) 188 Cal. 348 [205 P. 101], where the petitioner obtained money from the complaining witness upon the representation that he had formed a partnership to carry on a certain business and for that money would admit the witness as a member. The court, without any explanation for its reason for so holding, held that this did not establish the petitioner's guilt of embezzlement but that there was probable cause to believe the petitioner guilty of either of three distinct crimes: (1) larceny by trick and device, (2) embezzlement of money obtained by trick and device, or (3) obtaining money by false pretenses. The case is hardly a precedent to apply in the case at bench.

In *People* v. *Jones* (1950) 36 Cal.2d 373 [224 P.2d 353], the defendant relied upon *People* v. *Cravens* (1947) 79 Cal.App.2d 658 [180 P.2d 453], for the proposition that procuring money to be contributed to the capital of a partnership of which the victim is a member cannot constitute the crime of obtaining money by false pretenses because the victim, as a partner, retains an interest in the fund. (36 Cal.2d at p. 379.) The court held that the defendant, having perpetrated a fraud through the device of a partnership, could not escape criminal liability by reason of that same device upon the theory that the defrauded parties, by becoming members of the partnership to which they contributed their money pursuant to his representations, retain such an interest in that fund as to preclude the defendant's conviction of the crime of grand theft sounding in false pretenses. Any statements to the contrary in *People* v. *Cravens, supra,* were disapproved. (*Id.* at pp. 382-383.)

In *People* v. *Oehler* (1970) 7 Cal.App.3d 685 [86 Cal.Rptr. 703], in which the court reversed a conviction of a joint venturer convicted of grand theft from his joint venture, the court, referring to *People* v. *Foss, supra,* and to *People* v. *Brody, supra,* stated: "In general, a partner cannot steal from his partnership." (*Id.* at p. 687.) However, it pointed out that

there are exceptions to the rule, referring to *People* v. *Jones, supra,* 36 Cal.2d 373, 379-383. The *Oehler* court also referred to *People* v. *Cravens, supra,* 79 Cal.App.2d 658. In *Cravens,* the court, after stating the general rule that a partner cannot steal from the partnership, stated: "We are not satisfied that proof that the wrongdoer afterwards [that is, after the formation of the partnership] converted the partnership property to his own use while the victim was still subject to the influence of his false pretenses would not constitute the crime of obtaining money or property under false pretenses." (79 Cal.App.2d at p. 663.)

The distinction made by *People* v. *Jones, supra,* 36 Cal.2d 373, was once more reiterated in *People* v. *Woolson* (1960) 181 Cal.App.2d 657, 669-670 [5 Cal.Rptr. 766], in which the victim paid the defendant $20,000, part of which was to be used to obtain gold from the Yaqui Indians in Mexico and sold to the Mexican government. Again, that court upheld a conviction, despite a written agreement claimed to be one of partnership in that case, because it held that the question of the existence of an asserted partnership relationship was primarily for the finder of fact. But even if a partnership did exist, the court held that the crime of theft by false pretenses would apply to defalcations from a partnership and cited *People* v. *Jones, supra,* with approval, for the proposition that there cannot be an escape from criminal liability of grand theft sounding in false pretenses by the simple expedient of forming a partnership with the victim.

The broad rule that a partner cannot embezzle from a partnership has been rejected by the American Law Institute. In Model Penal Code section 223.0(7) (POD 1962), "property of another" is defined to include property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property. This is the equivalent of the former, tentative definition under section 206.1(4) (tentative draft No. 1, 1953), in which it is stated that the purpose of that definition is to nullify the concept that each of the joint owners has complete title to the jointly owned property so that a joint owner cannot misappropriate what already belongs to him. The draft states that, whatever might be the merits of such notions in the civil law, it is clear they have no relevance to the criminal law's effort to deter deprivations of other people's economic interests. Modern statutes including those of Minnesota, Wisconsin and Illinois, either expressly or impliedly reach the same result.

Louisiana has avoided following the California rule that a partner may not embezzle partnership funds by relying on civil law rather than on common law for the proposition that a partnership is legal entity en-

dowed with a personality separate and apart from its members and, since it is a separate legal entity, a partnership is "another" within the meaning of the statute on theft. (*State* v. *Morales* (1970) 256 La. 940 [240 So.2d 714, 716].) ■ California has generally recognized a partnership as a group of individuals rather than as a legal person or entity. (See 3 Witkin, Summary of Cal. Law, Partnership, § 7, p. 2268.) However, the recent trend of case law has flowed toward recognition of the unincorporated association as a separate legal entity. An unincorporated association is defined as any partnership or other unincorporated association of two or more persons. (*White* v. *Cox* (1971) 17 Cal.App.3d 824, 827 [95 Cal. Rptr. 259, 45 A.L.R.3d 1161].) In *White* v. *Cox,* a member of an unincorporated association of condominium owners brought an action against the association for personal injuries allegedly sustained when he tripped and fell over a water sprinkler negligently maintained by the association in the common area of the condominium project. The court reversed the trial court's sustaining of the association's demurrer without leave to amend and the judgment of dismissal. The court stated that unincorporated associations are entitled to general recognition as separate legal entities and that as a consequence a member of such association may maintain a tort action against his association. (*White* v. *Cox, supra,* at p. 828.) The court in *White,* in pointing out that unincorporated associations are now being tried as separate legal entities, discusses two cases: "A member of an unincorporated association does not incur liability for acts of the association or acts of its members which he did not authorize or perform. (*Orser* v. *George,* 252 Cal.App.2d 660, 670-671 [60 Cal.Rptr. 708].) A partner in a business partnership has been allowed to maintain an action against the partnership for the loss of his truck as a result of partnership negligence. (*Smith* v. *Hensley* (Ky.) 354 S.W.2d 744 [98 A.L.R.2d 340].) In the latter case the court declared that the doctrine of imputed negligence, which would normally bar a partner's recovery against the partnership, was an artificial rule of law which should yield to reason and practical considerations; since the partnership would have been liable for damages to the property of a stranger, no just reason existed for denying recovery for damages to the property of a partner." (*White* v. *Cox, supra,* 17 Cal.App. 3d 824, 827-828.)

"Under traditional legal concepts the partnership is regarded as an aggregate of individuals with each partner acting as agent for all other partners in the transaction of partnership business, and the agents of the partnership acting as agents for all of the partners." (*Marshall* v. *International Longshoremen's & Warehousemen's Union* (1962) 57 Cal.2d 781, 783 [22 Cal.Rptr. 211, 371 P.2d 987].) However this may be theoretically, in the facts presented in this case Sobiek was the only agent

for the partnership. He sought the person needing the loan and transacted all the necessary business in order to secure a second mortgage, and all he needed from the other officers of the club was one of their signatures on a withdrawal slip. The other members had little authority or no authority in the day-to-day operations of the club's affairs.

Under section 388 of the Code of Civil Procedure, a partnership may sue and be sued in its partnership name. Section 416.40 of the Code of Civil Procedure provides that service on a partnership of a summons may be made on a designated agent, any general partner, or the general manager of the partnership.

Thus, given the recent trend of the law in recognizing unincorporated associations as separate legal entities and the fact that Sobiek was the only person who acted as an agent for the club—not a situation where each member of the club was acting as an agent for all the other members—it seems only just to treat the Empire Investment Club as a separate entity within the meaning of "property of another."

The requirement of some cases, that to assure an embezzlement or a theft it is necessary to show not only that the property be of another but also that it be wholly of another, is not required by section 487. As has been shown above, this requirement is the basic reason for the broad rule that a partner cannot embezzle from a partnership. The dictum in *People* v. *Foss, supra,* 7 Cal.2d 669, is not controlling, particularly in view of the wording of the California statute (Pen. Code, § 484), and thus a partner may indeed embezzle from partnership funds.

It is both illogical and unreasonable to hold that a partner cannot steal from his partners merely because he has an undivided interest in the partnership property. Fundamentally, stealing that portion of the partners' shares which does not belong to the thief is no different from stealing the property of any other person. There is nothing in Penal Code section 484 which requires an interpretation different from that in Model Penal Code section 223.0(7), *supra.*

The People's contention that the indictment may be upheld on the ground that Sobiek obtained money by false representations, because he falsely stated to the club that he had made various loans and thereafter the members of the club continued to pay their monthly dues, cannot apply. Several cases have held that a person may be convicted of obtaining money by false pretenses when he has made false representations to induce people to join a partnership and then taken their money. But in order to convict a person on this theory, a showing must be made that the partnership was formed as part of a scheme to defraud and not as a going concern formed

in good faith. (*People* v. *Jones, supra,* 36 Cal.2d 373; *People* v. *Cravens, supra,* 79 Cal.App.2d 658.) The theory is that a person should not escape liability for his acts by perpetrating his fraud in two steps by forming a partnership. However, if no false representations are shown at the time of the formation of the partnership, this theory may not be used.

## 2. *Speedy trial*

Apparently, the fact that respondent had appropriated the group's money became known to it in August 1969. The district attorney's office of San Mateo County apparently learned of it in December 1969. The matter was discussed between representatives of that office and respondent and his attorney about January 26, 1970. Complaint was not filed against respondent until October 15, 1971. An indictment was filed November 23, 1971.

In *United States* v. *Marion* (1971) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455], the United States Supreme Court held that a delay of three years between the end of the criminal scheme charged and a return of an indictment did not violate the Sixth Amendment to the Constitution, commenting that there is no support for the proposition that preindictment delay in and of itself will constitute an infringement of constitutional standards. The court noted that an arrest might trigger the speedy trial safeguards of the Sixth Amendment but then stated: "But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case." (*United States* v. *Marion, supra,* 404 U.S. at pp. 321-322 [30 L.Ed.2d at p. 479].)

Thus, respondent's present argument has been directly answered by the United States Supreme Court. Moreover, his reliance on *Jones* v. *Superior Court* (1970) 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10], is not justified, because in that case a complaint had been issued and then delay took place. It was a simple case and there was no reason for delay, and the California Supreme Court found that prejudice to the defendant in fact resulted. No showing of prejudice was made in our case.

In *Jones* v. *Superior Court, supra,* 3 Cal.3d .734, the court was dealing with a situation where there was a long delay between the filing of the criminal complaint against the defendant and his arrest. The court pointed out that the right to a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution, and by article I, section 13, of the California Constitution, gives such right to an "accused." It stated that the California courts have interpreted both constitutional provisions to hold that " 'One does not become an "accused" until the filing of a complaint or other charge.' (*People* v. *Jordan* (1955) 45 Cal.2d 697, 708 [290 P.2d 484]; *People* v. *Aguirre* (1960) 181 Cal.App.2d 577, 580 [5 Cal.Rptr. 477].)" (*Jones* v. *Superior Court, supra,* at p. 739.) The court indicated it did not reach the question of the concept of "accused" as it was not applicable to that case.

■ Nonetheless, under certain circumstances an accused may be deprived of due process of law where the lapse of time between the alleged commission of the offense and the filing of the accusation makes it difficult or impossible for him to prepare a defense. (*People* v. *Archerd* (1970) 3 Cal.3d 615, 640 [91 Cal.Rptr. 397, 477 P.2d 421].) In order for Sobiek to show that he has been denied due process of law, he must show two things: (1) that there was no legitimate reason for the delay, and (2) that he was prejudiced by the delay. (*People* v. *Superior Court* (1970) 5 Cal. App.3d 698, 703 [85 Cal.Rptr. 327]; *People* v. *Wright* (1969) 2 Cal. App.3d 732, 737 [82 Cal.Rptr. 859]; *People* v. *Alvarado* (1968) 258 Cal.App.2d 756, 760 [66 Cal.Rptr. 41].) Sobiek bears the burden of establishing such a claim. (*People* v. *Archerd, supra,* at p. 640.)

■ Sobiek has not demonstrated that there was no legitimate purpose for the delay in bringing charges against him. The district attorney's office contends that during the entire period of delay it was investigating the circumstances of the alleged theft. Sobiek alleges that all the facts relative to the charge of grand theft and forgery were known by the district attorney's office in San Mateo County since December of 1969, and yet a warrant was not issued for his arrest until October of 1971. However, the affidavit of Don Ferrero, inspector for the San Mateo County District Attorney's office, states that Mr. Ferrero had been engaged in the investigation of the alleged thefts from the Empire Investment Club from December of 1969 until October 15, 1971. The affidavit states: "During the course of the investigation, I have interviewed a number of the members of the club and all the information contained in this affidavit was obtained in personal interviews with members of the club, persons who were supposed to have obtained second mortgages on their property, or officers of the banks involved together with the various business records of the club."

As stated in *Hoffa* v. *United States* (1966) 385 U.S. 293, 310 [17 L.Ed. 2d 374, 386, 87 S.Ct. 408], "The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." *People* v. *Archerd, supra,* 3 Cal.3d 615, 640, states: "The delay must be purposeful, oppressive, and even 'smack of deliberate obstruction on the part of the government,' before relief will be granted. *(Miller* v. *Rodriguez* (10th Cir. 1967) 373 F.2d 26, 28; . . .)"

However, until prejudice has been shown by Sobiek, there should be no inquiry into the reason for the delay *(United States* v. *Feinberg* (2d Cir. 1967) 383 F.2d 60, 67), as it would be unwise to impose upon the courts the inquisitorial function of scrutinizing the internal operations of law enforcement agencies when no possible prejudice to the accused has been shown. *(United States* v. *Ewell* (1966) 383 U.S. 116, 120 [15 L.Ed.2d 627, 630-631, 86 S.Ct. 773].)

Sobiek's statement of prejudice is as follows: "Charles Sobiek, petitioner herein, has been substantially prejudiced by these delays. When he and his attorney left the office of the District Attorney following the first citation conference, there was a distinct understanding that a restitution should be made and no prosecution would follow. In reliance upon this, Mr. Sobiek has made restitution by conveying four parcels of real property to Empire Investment Club and until the time of his indictment had considered the matter closed."

First, it should be noted that in an affidavit executed by Mr. Ferrero of the district attorney's office Mr. Ferrero stated that, at the meeting mentioned by Sobiek in Sobiek's statement of prejudice, there was no mention of what action the district attorney's office would take if restitution were made. Furthermore, sections 512 and 513 of the Penal Code provide that restoration of property alleged to have been embezzled is not a ground of defense. If Sobiek had not returned the property, the partners would have had an action for dissolution of the partnership and for an accounting. *(Prince* v. *Harting* (1960) 177 Cal.App.2d 720 [2 Cal.Rptr. 545]; *De Rigne* v. *Hart* (1928) 94 Cal.App. 209 [270 P. 1013].) Therefore, Sobiek has not demonstrated that he has been prejudiced by any delay in bringing charges against him.

3. *Ruling that a partner may be guilty of grand theft is not violative of article I, section 9, United States Constitution, or of article I, section 16, California Constitution.*

■ Appellant contends that applying our interpretation of Penal Code section 487 to this case is violative of article I, section 9, of the United States Constitution, and article I, section 16, of the California Constitution, as being an ex post facto determination of criminal liability.

■ A statute has an ex post facto effect when it alters the situation of an accused to his disadvantage by: (a) making criminal an action innocent when done; (b) making more serious an act already criminal when done; (c) inflicting greater punishment than that attending the act at the time it was committed; or (d) permitting a person to be convicted with less evidence than was required when the act was done. (*Kring* v. *Missouri* (1882) 107 U.S. 221 [27 L.Ed. 506, 2 S.Ct. 443].) The doctrine does not apply to trivial matters but to some vested and substantial right possessed at the time of the offense. (*Mallett* v. *North Carolina* (1901) 181 U.S. 589, 597 [45 L.Ed. 1015, 1019-1020, 21 S.Ct. 730]; *People* v. *Talkington* (1935) 8 Cal.App.2d 75, 82 [47 P.2d 368].)

■ Even changes in legislative enactments involving substantive crimes may not be ex post facto merely by virtue of their retroactive effects. For example, redefinition of provisions relating to grand theft did not violate the ex post facto doctrine where the substance of the offense remained the same, for the change did not call into play one of the four ex post facto categories. (*People* v. *Potter* (1966) 240 Cal.App.2d 621, 629 [49 Cal.Rptr. 892], cert. den. 388 U.S. 924 [18 L.Ed.2d 1374, 87 S.Ct. 2118].) A clarification of the law is not an ex post facto determination. (*People* v. *Rozell* (1963) 212 Cal.App.2d 875, 877-878 [28 Cal. Rptr. 478].)

Since no one has a vested and substantial right in a statute's characterization, no violation of the ex post facto rule is involved where a statute creates the crime of "grand theft," where there was no such crime at the time of the commission of the act.

In *People* v. *Venegas* (1970) 10 Cal.App.3d 814, 823 [89 Cal.Rptr. 103], a new statute prohibiting possession of a firearm by a convicted felon where the antecedent fact is the defendant's prior felony, was declared not violating the ex post facto rule.

*People* v. *Perez* (1972) 24 Cal.App.3d 340, 345 [100 Cal.Rptr. 834], dealt with a violation of subdivision (c) of Penal Code section 4530 (escape, wilful failure of a prisoner temporarily released to return to place of con-

finement). That subdivision was not in existence at the time the defendant signed the agreement to return. The court held that the statute did not violate the ex post facto rule as it did not involve an operative act upon which the corpus delicti of the crime charged must rest.

Examples of procedural changes held not to violate the ex post facto rule include: (a) permitting comment by the court; (b) formerly incompetent witnesses made competent to testify; (c) granting new rights of appeal to the state; (d) changes in the statute of limitations; (e) reception of previously inadmissible evidence; (f) permitting refixing of sentences; (g) extending time to pronounce judgment; (h) eliminating one of the grounds for quashing an indictment. (*People* v. *Ward* (1958) 50 Cal.2d 702, 708-709 [328 P.2d 777], disapproved on other grounds, *People* v. *Morse* (1964) 60 Cal.2d 631, 649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]; *People* v. *Williams* (1944) 24 Cal.2d 848, 850 [151 P.2d 244]; *People* v. *O'Bryan* (1913) 165 Cal. 55, 67-68 [130 P. 1042]; *People* v. *Snipe* (1972) 25 Cal.App.3d 742, 745, 747 [102 Cal.Rptr. 6]; *In re Hicks* (1938) 28 Cal.App.2d 671, 673-674 [83 P.2d 73]; *People* v. *Talkington, supra,* 8 Cal.App.2d 75, 83; *People* v. *Schmidt* (1917) 33 Cal.App. 426, 436-439 [165 P. 555].)

Prior to *People* v. *Ashley* (1954) 42 Cal.2d 246 [267 P.2d 271], a false promise was not a false representation of fact within the meaning of the law governing theft by false pretenses. (*Id.* at p. 260.) The Supreme Court traced the law of false pretenses to 30 Geo. II, chapter 24, section 1 (22 Stat. 114 [1757]). It analyzed cases applying this law from 1821 and determined the precise point of initial misinterpretation which had been perpetuated by dicta and reiterated by such commentators as Wharton. (*Id.* at pp. 259-260.) It noted that not all jurisdictions followed the rule and that California cases were in conflict. (*Id.* at pp. 260-262.) Finally, it rejected the defense that a false promise is not a representation of fact, and affirmed the conviction of the defendant before the court. (*Id.* at pp. 263-264, 274.)

This parallels the procedure followed by us in the case at bench in rejecting the defense that a partner is not stealing the property "of another." In *Ashley,* the court held that the determination in the early cases that a false promise was not a false representation of fact was based on misinterpretation and dicta. So in the case at bench the determination that partnership property was not property of another was also based upon misinterpretation and dicta.

The prohibition in the federal Constitution against ex post facto legislation was placed in article I, section 10, which governs legislative powers.

and is not in the article relating to the judiciary, article III. It has been held that that provision, according to the natural import of its term, is a restraint upon legislative power and concerns the making of laws, not their construction, by the courts. (*Ross* v. *Oregon* (1913) 227 U.S. 150, 161 [57 L.Ed. 458, 463, 33 S.Ct. 220].) However, due process does apply to the construction of statutes by the courts, and principles similar to those involved in ex post facto doctrine have evolved. Thus, in *Bouie* v. *City of Columbia* (1964) 378 U.S. 347 [12 L.Ed.2d 894, 84 S.Ct. 1697], which applied the lack-of-due-process rule to a prosecution of persons involved in a sit-in where no statute or ordinance prohibited such conduct, the reviewing court held that enlarging a certain statute to cover the conduct in question was an unforeseeable judicial enlargement of a criminal statute applied retroactively. ▪ That was an entirely different situation from the one at bench where not only is the interpretation of the grand theft reasonable, but the respondent must have known that his act was immoral and that he was taking the property of another.

In *United States* v. *Rundle* (E.D.Pa. 1966) 225 F.Supp. 936 (affd. in (3d Cir. 1967) 383 F.2d 421, cert. den. 393 U.S. 863 [21 L.Ed.2d 131, 89 S.Ct. 144]), the court pointed out the inapplicability of *Bouie* to the circumstances of that case. In *Rundle,* the relator and two others were engaged in the armed robbery of a supermarket. As the three attempted to flee the scene of the crime they engaged in a gun battle with the police, in the course of which a bystander was shot and killed. The relator was convicted under the Pennsylvania felony-murder rule. One of the main contentions made by the relator was that the act for which he was convicted was not a crime when it was committed and that, as a result, his conviction violated the ex post facto and due process clauses of the Constitution. The court, after stating that the ex post facto doctrine applied to legislative action and not to judicial action, went on to determine whether the relator had been deprived of due process by examining the nature of the change in the law and whether the relator had fair notice of the criminality of his conduct, saying, "This is not a case where an act clearly not criminal at the time of its occurrence, is so declared to be at some subsequent time. Nor is it a case where criminal responsibility should not attach because the actor could not reasonably understand that his contemplated conduct was proscribed." (255 F.Supp. at p. 947.) The court said further, "It is not always true that where the definition of a crime is extended by judicial construction, a conviction which results therefrom is a denial of due process" and, quoting Mr. Justice Holmes, ". . . the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a

short imprisonment, as here; he may incur the penalty of death. . . . *'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.'* Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1931). (Italics added.)" (255 F.Supp. at p. 948.)

Similarly, in the case at bar, "common social duty" would have forewarned respondent that "circumspect conduct" prohibited robbing his partners and also would have told him that he was stealing "property of another."

*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420], at first blush seems to support respondent's contention that the construction of section 487 placed upon it by this court deprives respondent of due process. However, a study of *Keeler* shows that it is not in point. *Keeler* held that the brutal killing of a fetus did not violate section 187 of the Penal Code, which defines murder as "the unlawful killing of a human being," because, as the court expends a number of pages to prove, a fetus is not a "human being" and "the Legislature intended to exclude from its reach the act of killing an unborn fetus." (2 Cal.3d at p. 631.) The court then states that were the court to determine that an infant in utero was a human being within the meaning of the murder statute, such determination would have met jurisdictional and constitutional barriers. That this is dictum cannot be gainsaid, for once the court determined the fetus was not a human being there was nothing more that needed to be determined. Dictum is not binding on this court. *(People* v. *Gregg* (1970) 5 Cal.App.3d 502, 506 [85 Cal.Rptr. 273].)

Moreover, the circumstances applying to section 187 are entirely different from those applying to section 487. The court in *Keeler* said that, prior to the killing, the defendant had no notice from any cause that destroying a viable fetus might be murder. As to the grand theft statute, section 487, there is no indication that the Legislature did not intend to include in "property of another" the property of partners other than the one stealing such property, or of the partnership itself.

Moreover, section 484 gave respondent full, fair and adequate notice that he would be punished if he did "feloniously steal . . . the personal property of another, or . . . fraudulently appropriate property which has been entrusted to him, or . . . defraud any other person of money . . . or real or personal property, . . ." This statute does not say that the property of the other person which is stolen must be entirely his. A partner's share in partnership property is as much his as is the errant part-

ner's share, the ownership of which the latter contends absolves him from the theft of that which belongs to the other.

As we have shown, respondent's defense relies upon an interpretation of the law which is improper because it is based upon mere dictum. If respondent, at the time he stole his partner's property, relied on a mistaken dictum of court, traditional notions of fair play and substantial justice are not offended by applying to his acts the clear meaning of sections 484 and 487.

The order appealed from is reversed.

Devine, P. J., and Rattigan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 4, 1973.