[No. A077748. First Dist.. Div. Four. June 22. 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
JOVAN SFARSAI FARSIGHT, Defendant and Appellant.

## Counsel

Susan Raffanti, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**REARDON, J.**—Following the preliminary hearing on charges of two counts of embezzlement by an agent or employee with an enhancement on count 1 for property exceeding $50,000, a jury trial began but thereafter the defense submitted the matter to a court trial on the preliminary transcript. The court found defendant Jovan Sfarsai Farsight (appellant) guilty as charged and found the special allegation to be true. It then suspended imposition of sentence and placed appellant on supervised probation for five years, ordering him to serve nine months in county jail, make restitution in the amount of $116,209 and pay a $200 restitution fine.

On appeal appellant maintains that the court abused its discretion in excluding documentary evidence critical to his "claim of title" defense. He further argues that the $200 fine was illegal. We strike the fine but affirm the conviction.

## I.  FACTUAL BACKGROUND

In May 1994 appellant was a fleet manager in charge of foreign car sales for Lexus of Serramonte in Colma. He had earned $113,365.42 in 1992. In 1993 his earnings dropped to $69,710. Effective January 1, 1994, the dealership discontinued appellant's monthly salary because of his low sales the previous year. Appellant's earnings for the first two quarters of 1994 totaled $4,990.98.

Lexus of America, the parent franchiser, permitted Lexus of Serramonte to sell vehicles overseas. The only impediment the parent imposed on its franchisees was in the nature of an inventory reduction penalty. For each car shipped overseas, the parent would allot one fewer car to the franchisee's inventory the following year. Lexus of Serramonte's overseas sales ran in the millions of dollars.

John Driebe, vice-president in charge of operations at Lexus of Serramonte, reported two Lexus LS400 vehicles as lost or stolen from the dealership around May 17, 1994, each worth $44,000.

Michael Dirickson, investigator for the San Mateo County District Attorney's Office, discovered that appellant had sold these vehicles to Ken Yu on May 27, 1994, for $88,800. Yu was co-owner of H & T Imports in Sacramento, a company specializing in overseas shipments. Yu had the vehicles shipped overseas after appellant drove them to the docks.

Yu had been doing business with appellant for two years and was certain that in his transactions with appellant, he was dealing with an official

representative of Lexus of Serramonte. Appellant was the only salesperson with whom Yu did business at that dealership.

On appellant's direction, Yu deposited a cashier's check in the amount of $88,800 into a Wells Fargo Bank account held by appellant. The account was a business account for C.A.L., a partnership described as a management consulting business located at 1040 Ferry Plaza, San Francisco. It turns out that address belonged to a private mailbox company located in the World Trade Center.

The signature card for the account listed appellant and his wife as signatories-partners of C.A.L.[1] Appellant had other Wells Fargo business accounts as well, under the names Sites Group, Newton Group and Ferax Industries. He was identified as the owner of these businesses.

Driebe was not aware of any of these businesses or the associated accounts. None were authorized by Lexus of Serramonte and Lexus of Serramonte received no money from the sale of the two Lexuses.

Dirickson's investigation revealed that Yu had purchased another Lexus from appellant in November 1993. He paid for the vehicle with a cashier's check for $27,409 which he handed to appellant. Yu shipped the vehicle to China. This particular Lexus was also reported by Driebe as stolen, and Lexus of Serramonte received no proceeds from the sale.

### Defense

Appellant's defense, as developed from representations and argument of counsel, was that he was entitled to the money deposited into the C.A.L. account because it constituted profits from a joint venture between himself, Driebe and the owner of Lexus of Serramonte. The purpose of the enterprise was to circumvent the export restrictions imposed by Lexus of America by disguising the overseas destination of Lexus sales. The partners maintained fake Department of Motor Vehicles (DMV) records to document that the sales were domestic rather than export sales,[2] engaged in artificial financing maneuvers to obtain incentives and set up straw business entities portrayed as leasing companies to accomplish these illegal ends. Appellant claimed he

---

[1]Lexus of Serramonte had a separate business called Capital Auto Leasing, an export leasing agency. According to appellant's attorney, appellant's responsibilities at Lexus of Serramonte included arranging "deals for Capital Auto Leasing which involved exporting of automobiles."

[2]On one or more occasions, appellant and Driebe apparently did alter internal Lexus of Serramonte records to show that a Lexus sold for export had been sold to a domestic customer. These sales were conducted under Capital Auto Leasing.

had entered into an oral partnership agreement with Driebe that the profits from export sales would be shared, with appellant receiving 25 percent. Further, he maintained he informed Driebe he was taking the $88,800 as his share and was going to hold onto those funds pending an accounting of partnership profits.

### The Excluded Evidence

Appellant subpoenaed thousands of documents from DMV, Lexus of America Corporation and Lexus of Serramonte in order to verify numerous transactions involving cars sold for export. The People moved to exclude this evidence.

According to appellant, the records would reveal that certain vehicles, identified by vehicle identification numbers and shown as domestic sales at Lexus of Serramonte, were never registered with the DMV and in fact were shipped overseas. These particular sales were handled through Capital Auto Leasing. From the various records of the disguised sales, one could deduce the total profit and the amount representing appellant's 25 percent share.

At the hearing on the People's motion, the prosecutor emphasized that none of the transactions reflected in the proffered documentation were handled through appellant's personal accounts. The only vehicle sales that went through his accounts were the ones subject to the criminal complaint plus another multivehicle/one-customer transaction that appellant apparently aborted. Only the names of appellant and his wife appeared on the "dba" statement for his accounts, and appellant's name did not appear on the Capital Auto Leasing "dba" statement.

The trial court excluded the proffered evidence on two grounds: (1) as a matter of law because the evidence did not satisfy the Penal Code section 511[3] requirements for a "claim of title" defense; and (2) under Evidence Code section 352 as spawning juror confusion and consuming too much time. However, the court further clarified that its ruling affected presentation of documentary evidence only and was "not intended to preclude Mr. Farsight from testifying as to the partnership or his intent, or better said, his lack of criminal intent in dealing with the cars involved or the proceeds from them—except that any testimony that he was attempting to offset or repay monies owed to him will not be relevant under [section] 511 of the Penal Code."

### II. DISCUSSION

Appellant contends the exclusion of evidence amounted to a denial of his due process right to a fair trial because the documentary evidence was

---

[3]Hereafter, section 511.

critical to corroborate testimony about his intent—i.e., he harbored no intent to steal but rather a subjective good faith belief that he was entitled to take the money as part of his agreed-upon share of profits pursuant to the oral partnership agreement. As a second argument appellant maintains the proffered evidence was relevant to his claim of title defense and should have been admitted.

These are not separate arguments. Appellant had one defense—claim of title. Either the evidence was relevant to that defense or it was not. We conclude it was not because in California that defense is limited in a such manner that the excluded evidence would not advance the statutory requirements.

Section 511 states: "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does not excuse the unlawful retention of the property of another to offset or pay demands held against him."

A defendant may not, under the blessing of section 511, retain property of another person to offset or pay demands against that person. Thus, for example, an employee may not unilaterally determine that the employer owes him or her certain wages and then, without authorization, appropriate the employer's property to pay those wages. (*People* v. *Creath* (1995) 31 Cal.App.4th 312, 318-319 [37 Cal.Rptr.2d 336].)

Appellant urges that his claim is different from the typical situation where an employee uses self-help to satisfy an alleged debt of his employer. Rather, under the oral partnership agreement he was entitled to his share of the profits from the enterprise and the money he deposited in his C.A.L. account was a portion of those profits. Prior to taking that money he told Driebe what he was planning to do.

This distinction is of no consequence. A partner can be guilty of fraudulently appropriating partnership property. (*People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 463-467 [106 Cal.Rptr. 519, 82 A.L.R.3d 804].) As the court in *Sobiek* explained, the history of the contrary rule—that a partner cannot be guilty of embezzlement from a partnership—can be traced to states whose statutes omitted "partner" from the category of persons potentially guilty of embezzlement, on the theory that for theft to occur, the property must be "of another." (*Id.* at pp. 463-464.) Under this analysis, the rule, broadly stated and applied, required that embezzled property be *wholly* that of another. (*Id.* at p. 464.)

In departing from this rule, the court in *Sobiek* gave credence to "the recent trend of case law" leaning toward recognition of a partnership or any other unincorporated association as a separate legal entity rather than as an aggregate of individuals with each partner acting as an agent for the other partners in transacting partnership business. (*People* v. *Sobiek, supra,* 30 Cal.App.3d at p. 467; see also *Oakdale Village Group* v. *Fong* (1996) 43 Cal.App.4th 539, 546 [50 Cal.Rptr.2d 810].)

The *Sobiek* theory of partnership undermines appellant's position. If, for purposes of embezzlement, we treat the partnership as a separate legal entity, then the limitation to the claim of title defense which excepts the self-helping employee who takes the employer's funds to pay his or her demand against the employer also excepts the self-helping partner who cannot wait for a partnership accounting. It is of no moment that appellant calls the money he took a share of partnership profits. Profits can be ascertained only after accounting for the partnership transactions. What appellant took was Yu's payment for three Lexuses. Under appellant's partnership defense this would constitute *income* from partnership transactions. He had lost his monthly salary and, as defense counsel put it, "was taking this money 'cause he needed something to live on as an advance against the profits that he was owed . . . ." This is the classic offset situation that falls outside the claim of title defense.

## III. DISPOSITION

The trial court correctly excluded the proffered evidence and therefore we affirm the convictions but strike the restitution fine of $200. The court ordered appellant to pay restitution to Lexus of Serramonte in the amount of $116,209 and also to pay a restitution fine of $200 pursuant to Penal Code section 1202.4. Appellant was entitled to a credit for the restitution he was ordered to pay to Lexus of Serramonte. Since the $116,209 more than covers the $200 fine, the fine is stricken. (*People* v. *Forshay* (1995) 39 Cal.App.4th 686, 690 [46 Cal.Rptr.2d 116]; *People* v. *Cotter* (1992) 6 Cal.App.4th 1671, 1677 [8 Cal.Rptr.2d 606].)

Hanlon, P. J., and Poché, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 23, 1998.