[Crim. No. 9730. Fourth Dist., Div. Two. Nov. 30, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE LYNN PEDERSEN, Defendant and Appellant.

**COUNSEL**

John M. Polakovic for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Henry R. Mann, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MORRIS, J.**—Defendant, Wayne Lynn Pedersen, appeals from a judgment of conviction for embezzlement (Pen. Code, §§ 487, 503) and for signing a false income tax return with intent to evade the payment of taxes (Rev. & Tax. Code, § 19406).

### FACTS

Carbon Canyon Properties is a limited partnership composed of 22 partners. Holding a majority interest in the partnership are four general

partners, Dr. Leo Heuler, Dr. George Heuler, Delmar Pebley, and William G. Claussen.

Carbon Canyon Properties wholly owns Western Hills Golf and Country Club, which is a corporation operating a golf course. Adjacent to the golf course is Western Hills Mobile Home Estate, which was constructed in 1975 and is directly owned and operated by Carbon Canyon Properties.

Western Hills Golf and Country Club maintained two checking accounts: the general account, which required the signatures of both the manager and an authorized general partner, and the payroll account, which required only the manager's signature. Carbon Canyon Properties had one checking account, which required two authorized signatures.

In 1970, defendant, who had been working as a chef for the club, accepted the position of manager of Western Hills Golf and Country Club. Sometime thereafter defendant began to do considerable work on the development of the mobile home park. Because of his involvement with the mobile home park, defendant was made a signatory on the Carbon Canyon Properties checking account. The other signatory was Dr. Leo Heuler. As a reward for his good work, defendant was allowed to purchase a 1/88 share of the partnership on a time basis. He never completed payment for the share.

During 1976, it was discovered that several checks drawn on the Western Hills Golf and Country Club general account and the Carbon Canyon Properties account had been signed by using a rubber stamp of Dr. Leo Heuler's signature. (The rubber stamp had been left in the office of the golf club to sign membership cards. No one was authorized to sign checks with it.) Most of the checks, including one for $17,500, were made out to defendant. None of the partners authorized the checks.

It was also discovered that several checks drawn on the Carbon Canyon Properties account and cosigned by authorized partners were used to pay for services and equipment at a restaurant defendant was building. The use of partnership funds for this purpose was not authorized by the partners.

The total amount of all the checks in question apparently is in the neighborhood of $40,000.

Other facts are presented as relevant to the discussion of particular issues.

## DISCUSSION

■ During the voir dire examination of a prospective juror, defendant's counsel asked, "Approximately what is your yearly income?" The court sustained its own objection to the question. Defendant contends that disallowing the question denied him a fair and impartial trial. Noting that the right to an objectively selected impartial jury is an essential element of due process, he argues that since large monetary figures would be bandied about during the trial, it is necessary to select jurors who can at least think in such figures. He equates the refusal to allow him to inquire into the financial condition of prospective jurors with a refusal to permit questioning on the subject of racial bias, which has been held to be a denial of due process (see *Ham* v. *South Carolina* (1973) 409 U.S. 524 [35 L.Ed.2d 46, 93 S.Ct. 848]). The People acknowledge that the judge must allow a reasonable examination of prospective jurors by counsel (Pen. Code, § 1078), but point out that a juror may not be examined on voir dire solely for the purpose of laying the foundation for the exercise of a peremptory challenge (*People* v. *Crowe* (1973) 8 Cal.3d 815, 830 [106 Cal.Rptr. 369, 506 P.2d 193].) The People argue that defendant's asserted reason for the question does not go to actual bias or any of the statutory grounds for challenge for cause and suggest that the real reason is to determine the advisability of exercising a peremptory challenge.

Defendant's equation of questions into racial bias with questions into financial condition is baseless; certainly, he offers no reasoning to support such a position. We agree with the People that the inquiry into annual income is not relevant to show bias or other grounds for challenge for cause and is more relevant to determining the advisability of exercising a peremptory challenge than anything else. As such the question was properly refused. Moreover, we cannot subscribe to the fanciful proposition, implicit in defendant's contention, that figures in the area of $100,000, or even a million dollars (figures mentioned in defendant's brief) are somehow so beyond the comprehension of typical jurors that the jury cannot fairly evaluate the facts and determine defendant's guilt or innocence.

■ Defendant next contends that the court erred in refusing to give a jury instruction explaining that witnesses not at the time under examination may be excluded from the courtroom so they cannot hear the

testimony of other witnesses. Early in the trial, the court granted defendant's motion to exclude witnesses. During the cross-examination of witness Dr. George Heuler, the doctor acknowledged that he had had some conversations with the district attorney regarding defendant's testimony. Noting that he has a right to have the jury instructed on every material question presented by the evidence, defendant argues that Dr. Heuler's credibility was a material issue and he needed the requested instruction in order fully to argue the impact of the prosecutor's conduct in connection with Dr. Heuler's testimony.

We need not determine whether there was a violation of the letter or spirit of the witness exclusion order,[1] because in any event the jury was instructed to the effect that they were the sole judges of the credibility of witnesses and that they could consider any matter that has a tendency in reason to prove or disprove the truthfulness of a witness' testimony. The issue of Dr. Heuler's credibility was adequately covered by this instruction. The reason behind a witness exclusion order is only collateral to the material issues of the trial, and the refusal to give an instruction on it certainly did not prevent defendant from arguing the credibility of Dr. Heuler, including the impact of his conversations with the prosecutor, to the jury.

■ Defendant's third contention is that the court erred in refusing to give his requested instructions to the effect that a partner cannot steal from his partnership. He argues that the trial court was bound by the doctrine of *stare decisis* to follow *People* v. *Foss* (1936) 7 Cal.2d 669 [62 P.2d 372], where the Supreme Court stated at page 670: "The rule that a partner cannot steal from the partnership is, of course, well settled . . ." and *People* v. *Oehler* (1970) 7 Cal.App.3d 685 [86 Cal.Rptr. 703], in which Division One of this District Court of Appeal reiterated the rule, noted that it also applies to embezzlement, and then applied it to the case before it.

The People point to *People* v. *Sobiek* (1973) 30 Cal.App.3d 458 [106 Cal.Rptr. 519], where the court held that a partner may indeed embezzle from partnership funds. Examining at length the case law on the rule that a partner cannot steal from his partnership, the court traced the rule's history to cases from Arizona and South Dakota where statutes had

[1]Apparently there was no express admonition to refrain from discussing another witness' testimony with anyone. Also, a reading of the transcript suggests that the conversations between the prosecutor and Dr. Heuler were not in-depth reviews of defendant's testimony and that Dr. Heuler was told not so much exactly what defendant had said on the stand as what areas he had testified about.

omitted the category of partner from a list of persons who could be guilty of embezzlement. The court found that the basic thought behind the rule is that since each partner is the owner of an undivided interest in all of the partnership property and since no one can be guilty of stealing or embezzling what belongs to him, a partner cannot be convicted of embezzling partnership property, i.e., the property must be "of another." In this formulation, the rule requires not only that the property must be "of another," but that it must be "*wholly* of another." In interpreting the California statutes, the court concluded that it was totally inappropriate to adopt a judicial rule requiring that the embezzled property be *wholly* of another. The court also noted that the rule has been much criticized and has been rejected by the American Law Institute in the Model Penal Code and that in many of the California cases the statement of the rule was mere dicta. Finally, the court reasoned that allowing prosecution of embezzling partners was consistent with the trend of the law recognizing partnerships as separate legal entities and not merely as an aggregate of individuals.

We have examined the California Supreme Court cases involving the rule and find that the statements of the rule contained therein are dicta (see *People* v. *Foss, supra,* 7 Cal.2d 669; *People* v. *Pond* (1955) 44 Cal.2d 665 [284 P.2d 793]), thus we are not required to follow such statements. *People* v. *Oehler, supra,* 7 Cal.App.3d 685, states the rule, notes that it has been disparaged and is subject to exceptions but has not been overruled, and then applies it. This is hardly an enthusiastic embracement of the rule. We find the reasoning of *People* v. *Sobiek, supra,* 30 Cal.App.3d 458, persuasive (see also Note, *People* v. *Sobiek*: *Punishing the Embezzling Partner* (1974) 25 Hastings L.J. 1266; 1 Witkin, Cal. Crimes (1978 Supp.) § 380, pp. 369-370), and see no reason to repeat or add to what was said in that opinion, and thus hold that the trial court did not err in refusing defendant's requested instructions.

■  Defendant's fourth contention is that the court erred in permitting a tape recording of a conversation between defendant and some general partners to be played before the jury. He argues that the conversation was a confidential communication and thus inadmissible under Penal Code section 632. That section prohibits intentional recording of a confidential communication without the consent of all parties thereto and provides that no evidence obtained as a result of recording a communication in violation of the section is admissible in any judicial proceeding. Subdivision (c) of the section states: "The term 'confidential communication' includes any communication carried on in such circumstances as may

reasonably indicate that any party to such communication desires it to be confined to such parties, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

Whether a communication is confidential in a case such as this is a preliminary question of fact. (See Evid. Code, § 400.) In the instant case, after testimony outside the presence of the jury and argument by counsel, the court found that the recorded conversation was not a confidential communication. There is substantial evidence to support this finding. In response to Dr. George Heuler's telephone call, defendant came to Dr. Heuler's office for a meeting. Present at the meeting were Dr. Heuler, defendant, one or two other partners, and two accountants. Defendant was not informed of the purpose of the meeting before he arrived, nor was he told that the conversation was being recorded. Dr. Heuler did not intend the meeting to be confidential, and no one told defendant that the contents of the conversation would not be revealed to others. At the meeting, defendant was questioned about various checks, and, obviously feeling accused, he at one point told the others that if they thought he had done something criminal, then take the necessary steps. The meeting ended with the defendant arranging to compile his records to answer the partners' questions. The nature of the meeting and the manner in which it was carried out are such that the court could reasonably conclude that it was no different than other business meetings of the parties that were not confidential.

Finally, defendant contends there was insufficient evidence to find him guilty of violating Revenue and Taxation Code section 19406, i.e., signing a false income tax return with intent to evade the payment of taxes. He first argues that had the court given his requested instructions on the defense of being a partner, he would not have been convicted of embezzlement, and a conviction on this charge probably would not have occurred. The logic of defendant's argument escapes us; the income must be reported whether or not it is obtained through embezzlement. In any case, we have already determined that the requested instructions were properly refused.

■ Defendant asserts that the income not reported on his tax returns was reimbursement for expenses. He argues that if a taxpayer makes an accounting to an employer for expenses and is reimbursed, it is not

necessary to report either the expenses or reimbursements on the taxpayer's tax return. However, defendant fails to point to any showing that reimbursements were for expenses or that he made an accounting to his employer. There was ample evidence from which to conclude that no accounting of expenses was made; examination of numerous financial statements failed to reveal such an accounting. According to the testimony of a state income tax auditor, defendant did not report $32,054 in income in 1975. The jury apparently did not believe that this sum was reimbursement for unaccounted expenses. There was substantial evidence to support the conviction.

The judgment is affirmed.

Gardner, P. J., and Tamura, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 24, 1979.