[No. A020523. First Dist., Div. Three. Mar. 19, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
KAY PARRA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Certified for publication except as to parts I-C, II and III. (Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

Noah Sherman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene W. Kaster and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ANDERSON, J.\***—Defendant, Kay Parra (hereafter appellant or Parra), appeals from a judgment of conviction for grand theft.

While on vacation, the Livermore home of Attorney Lloyd Haines was burglarized and rare coins, jewelry and cash worth about $16,500 were taken. On arrival home, December 9, 1980, Haines called the police and also contacted Parra who had been his longtime client and who had worked for him in various capacities, including house painting. Haines enlisted Parra's help because he believed that Parra might be able to trace the stolen property due to her personal background and contacts in the Livermore area.

Parra arrived at Haines' house the same evening with her son, Jeff. She and her son supplied names of possible suspects to police investigating the crime. At Haines' request, she then left to make her own inquiries.

An hour or so later Parra returned to Haines' house alone. She told him that the stolen property might be in Richmond. Haines gave her a list of the property and $1,800 in cash with which to buy it back. Parra took the money and left.

*Assigned by the Chairperson of the Judicial Council.

Later the same night Parra returned the $1,800, stating that she had been unable to find the property but had identified a fence in Richmond to whom the property had been offered. Thereupon, Haines increased the amount for the return of jewelry and coins to $4,000. Parra promised to continue her efforts and recontact Haines later.

Five days later Parra telephoned Haines that she had located the property. Around noon Parra arrived at Haines' house; Haines gave her $4,000 in cash in order to retrieve his property. He did not ask for a receipt because he trusted her.

Since Parra failed to return either the property or the money and did not report back on the result of her mission, Haines, in the following days, made repeated attempts to contact her on the phone and he also paid a personal visit to her home. When all his efforts remained unsuccessful, on December 23, 1980, Haines sent a mailgram to appellant urging her to contact him immediately. He also asked his girlfriend, Linda Frey, and his colleague, Hugh Walker, to try to reach appellant by phone.

On December 29, 1980, both Frey and Walker tried to call appellant by phone without success. That same night Haines received a hand-delivered, typewritten letter from appellant in which she accused Haines, Walker and Dr. Jim Danielson, Haines' business associate, of engineering a robbery and battery on her; of trying to cheat her out of wages she earned by painting Haines' home; and she also threatened physical reprisal on Haines, Walker and Danielson for the alleged robbery and beating masterminded by the three.

Haines immediately telephoned Walker and read the letter to him. Thereafter, Walker called appellant on the phone and without her consent or knowledge, tape recorded the conversation by holding a dictation unit to the phone. In this telephone conversation, Parra acknowledged receiving the money from Haines with which to buy back the stolen property. Walker repeatedly stated in his testimony[1] that he decided to tape the telephone conversation with appellant because she threatened him with great bodily harm and violence in revenge for the battery and robbery committed against her by two individuals allegedly hired by Walker, Haines and Danielson.

---

[1]The illustrative part of the record reads as follows: "Q. [of Walker]. Now, why did you do that? Why did you tape-record that conversation? [¶] A. [by Walker]. I could not believe what the contents of the letter that had just been read to me were. I was blown away, as the expression goes, and if in fact threats had been made against my life, or Lloyd's life, and if in my conversation with Kay Parra she was going to reiterate those threats, I wanted a tape-recording of that conversation."

Appellant, testifying on her behalf, denied that she had received any money from Haines; that she had sent the three-page letter to Haines; and/or that she had participated in the recorded conversation with Walker.

Based upon the foregoing facts appellant was charged with grand theft in violation of Penal Code[2] section 487, subdivision 1. Prior to trial appellant moved to set aside the information per section 995 which was denied. A jury trial commenced at the conclusion of which appellant was found guilty as charged. After appellant's motion for a new trial was denied, she was sentenced to state prison for the lower term of 16 months.

On appeal appellant contends that the judgment of conviction should be reversed because (1) the tape recording of the telephone conversation was improperly admitted in evidence; (2) the trial court abused its discretion in denying appellant's motion for a new trial; and (3) the trial judge committed prejudicial misconduct. As the ensuing discussion demonstrates, none of these contentions is meritorious and therefore the judgment below is affirmed.

I

ADMISSION OF TAPE RECORDING IN EVIDENCE

A. *The Recording Itself Was Not Unlawfully Obtained*

██    Appellant first argues that tape recording of her December 29, 1980, telephone conversation with Walker was erroneously admitted in evidence because it violated section 632 and was not excepted by section 633.5.

██    It is settled in California that the intentional electronic recording of a confidential telephone communication without the consent or knowledge of all parties to such communication is illegal, and that the tape recording thus obtained (with certain exceptions here irrelevant) is inadmissible in a judicial proceeding. (§ 632, subds. (a) and (d);[3] *Warden* v. *Kahn* (1979) 99

---

[2]Unless otherwise indicated, all further statutory references are to the Penal Code.

[3]Section 632 provides in part: "(a) .... Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records such confidential communication, whether such communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punishable by fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both such fine and imprisonment in the county jail or in the state prison. If such person has previously been convicted of a violation of this section or Section 631 or 636, he is punishable by fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the county jail not

Cal.App.3d 805, 812 [160 Cal.Rptr. 471]; *People* v. *Pedersen* (1978) 86 Cal.App.3d 987, 993 [150 Cal.Rptr. 577]; *People* v. *Wyrick* (1978) 77 Cal.App.3d 903, 909 [144 Cal.Rptr. 38]; *Forest E. Olson, Inc.* v. *Superior Court* (1976) 63 Cal.App.3d 188, 191 [133 Cal.Rptr. 573].) ▮ The record herein unequivocally shows that the tape recording by Walker of his telephone conversation with the appellant was intentional and that this recording occurred without the knowledge or consent of appellant. It also clearly appears that the communication was confidential within the meaning of section 632, subdivision (c),[4] inasmuch as appellant could reasonably expect her acknowledgement of having received the $4,000 to be confined solely to Walker.

Nonetheless, the tape recording in question was admissible in evidence because it falls squarely within the exception of section 633.5: *"Nothing in Section 631 or 632 shall be construed as prohibiting one party to a confidential communication from recording such communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party* to such communication of the crime of extortion, kidnapping, bribery, *any felony involving violence against the person* or a violation of Section 653m, and nothing in Section 631 or 632 shall be construed as rendering inadmissible in a prosecution for extortion, kidnapping, bribery, any felony involving violence against the person, or a violation of Section 653m, or any crime in connection therewith, any evidence so obtained."* (Italics added.)

The record here stands uncontradicted that Walker decided to tape the December 29 telephone conversation with appellant because he learned that appellant had threatened him and his family with physical violence and because he was gravely concerned about his personal safety. His recording was clearly *for the purpose of* obtaining evidence of appellant's intent to carry out her prior written threats of physical violence; that he did not succeed in accomplishing such purpose does not alter that purpose. Thus,

---

exceeding one year, or by imprisonment in the state prison, or both such fine and imprisonment in the county jail or in the state prison.

"⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯ ⋯

"(d) . . . . Except as proof in an action or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative, legislative or other proceeding."

[4]Subdivision (c) of section 632 reads as follows: "The term 'confidential communication' includes any communication carried on in such circumstances as may reasonably indicate that any party to such communication desires it to be confined to such parties, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

Walker's uncontradicted testimony of why he recorded the appellant's voice was sufficient to except that recording from the prohibition of section 632 (*People* v. *Suite* (1980) 101 Cal.App.3d 680, 688-689 [161 Cal.Rptr. 825]) and to render it admissible pursuant to the general rules of evidence. (Evid. Code, § 351 et seq.)

B. *The Lawfully Obtained Recording Was Not Rendered Inadmissible by Statute*

Appellant's argument that, even if legal, the tape recording in question was inadmissible because *the prosecution* was only for grand theft and not for any of the offenses enumerated in section 633.5, is unpersuasive and must be rejected for several reasons.

First, we commence with the general proposition that unless unlawfully obtained, all relevant evidence is admissible and section 633.5 makes it explicit that where, as here, the tape recording of a telephone communication is made for the purpose of obtaining evidence relating to the felonies listed in the statute, the recording is not prohibited by either section 631 or section 632—hence, such evidence was not unlawfully obtained.

Second, the second part of section 633.5 provides (and only in negative terms) that a tape recording lawfully made is not inadmissible in the prosecution of the specific offenses enumerated therein. Nowhere does it provide that such evidence must be excluded in prosecutions for offenses not enumerated.

Third, the authorities interpreting section 633.5 or its equivalent federal counterpart emphasize that a communication lawfully recorded by a private party to the communication may be introduced in evidence not only in the prosecution of the listed felonies, but also in unrelated cases. At least one commentator reasons that evidence obtained by one who reasonably believes he is acting pursuant to section 633.5 has general admissibility because "The situation is similar to a search incident to an arrest where an officer has probable cause to arrest for one crime and in the course of the associated search finds evidence related to another offense. Such evidence is admissible, and the same rule probably would obtain here." (Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev. 1182, 1237-1238, fns. omitted.) Similarly, in *Moore* v. *Telfon Communications Corp.* (9th Cir. 1978) 589 F.2d 959, 966, the federal appellate court holds that Congress did not intend to prohibit admissibility of a recording made for the purpose of preserving evidence of extortion directed against the recorder in a subsequent suit to terminate a franchise

agreement (i.e., usage of extortion evidence in an unrelated case). (Accord *People* v. *Hopkins* (1978) 93 Misc.2d 501 [402 N.Y.S.2d 914].)

C. *The Lawfully Obtained Recording Was Not Rendered Inadmissible for Any Other Reason**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The judgment is affirmed.

White, P. J., concurred in the judgment.

Barry-Deal, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 16, 1985. Reynoso, J., was of the opinion that the petition should be granted.

---

*Part C of this opinion is not certified for publication. (See fn., *ante,* at p. 874.)