GOVERNMENT OF the VIRGIN ISLANDS

v.

William A. RICHARDS, Appellant.

No. 78–2164.

United States Court of Appeals,
Third Circuit.

Argued Dec. 4, 1979.

Decided March 3, 1980.

Ishmael A. Meyers, U. S. Atty., Mark L. Milligan (argued), Melvin H. Evans, Jr., Asst. U. S. Attys., Christiansted, St. Croix, V. I., for appellee.

Frank Padilla (argued), Frederiksted, St. Croix, V. I., for appellant.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

OPINION OF THE COURT

WEIS, Circuit Judge.

The Virgin Islands Criminal Code proscribes embezzlement by an agent or an individual intrusted with property for the use of another. The defendant was convicted on four counts under this statute for converting money given to him for the purchase of automobiles. The jury was given the alternative of finding guilt under either

an agency or intrustment theory. We conclude that there was insufficient evidence to establish agency in any of the counts but enough testimony on intrustment in three counts to require that they be retried. The evidence in the fourth count, however, does not meet the statutory requirements on either ground and on that charge judgment of acquittal will be entered.

After a jury trial, the defendant was convicted of four counts of embezzlement under V.I. Code Ann. tit. 14, § 1091 (Equity 1964), in connection with transactions where he failed to deliver certain automobiles for which he had been paid. The statute reads:

"Whoever, being a trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator, or collector, or person otherwise intrusted with or having in his control property for the use of any other person, fraudulently appropriates it to any use or purpose not in due and lawful execution of his trust, or secrets it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

In the information the defendant was described as "WILLIAM A. RICHARDS, agent, Ken-Ric Motors, Inc." Testimony at the trial established that he was the president, sole stockholder, and only employee of Ken-Ric Motors, a firm engaged in the business of selling and repairing new and used automobiles on St. Croix. Ken-Ric was not an authorized dealer for any specific make of car but, at the request of customers, purchased specified makes and models of automobiles from sources on the mainland. The transaction with Roy Hendrickson, one of the complaining witnesses, was similar to those forming the substance of the other three counts on which Richards was charged.

Roy Hendrickson testified that in October of 1976 he went to Richards' office to purchase a 1977 Oldsmobile Cutlass Supreme and made a deposit of $650 at that time. In December Hendrickson paid an additional $1,000. On that occasion, he obtained the car's serial number from the defendant and used it in applying for a $5,000 loan from a local bank. The loan was approved in January 1977, and the bank issued its check for $5,000 payable to "Roy Hendrickson & Ken-Ric Motors, Inc." Hendrickson testified that when he took the check to Richards and endorsed it, Richards said the money was to be sent to Miami to the man who would supply the car. The witness said that he agreed to buy the car for a total of $7,600, the final $1,000 to be paid on delivery. (No explanation was given as to why the total payments exceeded the agreed upon purchase price.) A Ken-Ric Motors' business form dated January 14, 1977 and signed by the parties included a description of the car and its price.[1]

On cross-examination, Hendrickson said that he had agreed upon the price and had no concern about where the defendant secured the car or whether he paid more or less than $7,600 to secure it. Although Richards promised to deliver the automobile, it never arrived on St. Croix, and he did not refund the money to Hendrickson.

The trial judge charged the jury that in order to convict, they had to find that the defendant was the agent of Roy Hendrickson and the other parties, or that they had "intrusted" Richards with property. "Intrusted" was said to imply "some sort of direction or trust, not just given, not just handed over money." In addition, the jury was asked to determine whether the money became the property of the defendant or was still the property of those who had given it to him. The court charged the jury, "You will have to decide was it simply a sale and a purchase of an automobile." The jury, found the defendant guilty on all counts. On appeal, the defendant contends the government failed to establish an agency or other fiduciary relationship essential to the crimes charged.

1. The form reads in part:
   "Please enter my order for OneW [sic] New [x] Used [ ] Make of vehicle OLDSMOBILE Year 1977 Model Broughan Cutlass Supreme"

Embezzlement did not exist at common law but is a statutory crime developed in response to a gap in the law of larceny. To convict a person of larceny, the prosecution was required to prove that the accused had come into possession of the goods by committing a trespass. For example, a servant who came into lawful possession of goods destined for his master could not be guilty of larceny if he fraudulently converted them. *See* R. Perkins, Criminal Law § 3, at 287 (2d ed. 1969). In response, statutes have been enacted to cover such varied situations as bailments, trusts, consignments, employment, and others that fall outside the confines of the larceny definition. *See* Note, *Criminal Breaches of Trust—A Statutory Survey*, 39 Colum. L.Rev. 1004 (1939).

The Virgin Islands Criminal Code devotes several sections to embezzlement. Section 1087 defines the offense as the fraudulent appropriation of property by a person to whom it has been entrusted. Section 1089 makes embezzlement by public and private officers a crime. Section 1090 penalizes embezzlement by carriers. Section 1092 proscribes embezzlement by bailees, and § 1093 covers embezzlement by clerks, agents, and employees.

The defendant was charged with violating § 1091—the terms of which implicate fiduciary relationships. The statute lists, among other categories, trustees, attorneys, agents, executors, administrators, and others "intrusted with or having in his control property for the use of any other person . . . [who] appropriates it to any use . . . not in the due and lawful execution of his trust . . . ."

Some forms of embezzlement require that the object of the offense be "the property of another." *See, e. g.*, V.I. Code Ann. tit. 14, § 1093 (Equity 1964) (embezzlement by clerks, agents, employees, etc.). Under § 1091, however, this is not required. That section requires only that the property be "for the use of any other person." As one commentator explains, "The embezzler starts with lawful possession and may have title, as in the case of a trustee. But the title of a trustee is a restricted title, held only for the purpose of the trust, and the beneficial ownership is in the one for whom the property is held." R. Perkins, *supra* at 291; *cf. People v. Sobiek*, 30 Cal.App.3d 458, 106 Cal.Rptr. 519, *cert. denied*, 414 U.S. 855, 94 S.Ct. 155, 38 L.Ed.2d 104 (1973) (holding that a partner may be convicted of embezzling partnership property).

■ The information charged that the defendant was an agent, and the jury was instructed that it could find guilt on that basis. The testimony, however, fails to establish an agency relationship between the defendant and any of the complaining witnesses. All of the complaining witnesses admitted that they did not control the defendant's manner of doing business, did not tell him where to get the car, and did not limit his activity in any way. The agreement was that the defendant was to deliver a certain type of automobile to the customer at a price fixed in advance. This was not a commission arrangement, and the defendant assumed all risk of loss. Furthermore, the purchaser had no right to a reduced price if the defendant was able to make a particularly favorable acquisition of the desired make and model.

The touchstone of an agency relationship—the right to control, Restatement (Second) of Agency § 14 (1958)—was not established by the prosecution either by direct testimony or by implication. To the contrary, the record demonstrates that there was an absence of the right to control. Because there was no evidence to support an agency relationship, it was error to submit that issue to the jury.

■ The trial judge gave the jury the opportunity to come to an alternative finding that the defendant was a person "otherwise intrusted with or having in his control property for the use of another person." But the verdict does not reveal in which category the jury placed the defendant. When it is improper to submit a case on one of two alternative theories, a new trial must be granted on the theory that would support a guilty verdict. *United States v. Dansker*, 537 F.2d 40, 51 (3d Cir. 1976), *cert.*

*nied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Of course, a new trial would be barred by the double jeopardy clause if the prosecution failed to sustain its evidentiary burden on the viable theory as well. *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978); *United States v. Gallagher*, 602 F.2d 1139, 1142–43 (3rd Cir. 1979), *cert. dismissed,* ―― U.S. ――, 100 S.Ct. 713, 62 L.Ed.2d 675 (1980). Consequently, we must determine whether the jury could have found the defendant to be a person entrusted with property for the use of another. As we noted earlier, the statute requires the evidence to establish that a fiduciary relationship was created when the complaining witnesses entrusted property to the defendant for their use.

Count IV charged that the defendant fraudulently appropriated $1,000 of money intrusted to him by Mabel Arnold. We have reviewed her testimony and find no evidence of anything other than a standard transaction to purchase a used automobile. She testified that she wished to buy a used Maverick and gave him $1,000 as part payment. There was no testimony that at the time the payment was made the defendant had agreed to take the money and use it to purchase a specific car from a specific individual, or that the $1,000 was to be segregated from Ken-Ric's general funds. This transaction was simply a purchase agreement. Therefore, § 1091 was not violated because the prosecution did not establish an intrustment that would give rise to a fiduciary relationship.

■ The evidence in Counts I, II, and III is somewhat different. Testifying as to the charges in Count III, Roy Hendrickson said that after he was given the serial number of the car by Richards, he went to the bank to get a loan. He gave this $5,000 to Richards and stated that his understanding was that "[t]he money was supposed to be sent to Miami for the man we were getting the car from, Frank. That is what he [(the defendant)] told me. [Question:] Did you, in any way, authorize [the defendant] to do anything else with the money, other than to purchase the car? [Answer:] No, sir." The check that the bank had made payable to Roy Hendrickson and Ken-Ric Motors contained the following language:

"By endorsement hereof the payee(s) warrant(s) to apply this loan proceeds check to the purchase of the following described vehicle, which will be used as collateral on this loan [listing description of an Olds automobile and serial number] to be titled in the name of Roy Hendrickson."

Witness Clemence Hendrickson, testifying as to Count II, said that he obtained a car's serial number from the defendant, took it to the bank, and received a check which he delivered to Richards. A copy of that check and its endorsement, if any, however, was not introduced in evidence. Emmeth Hendrickson, called as to Count I, said, "My understanding was this, the money was to be sent to whomever he was dealing with in Miami."

At this stage of the litigation, we must read the evidence in the light most favorable to the prosecution. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). From this viewpoint, the government made out a case, albeit a slim one, for the jury. The testimony of the complaining witnesses could be found to establish the fact that the defendant was given certain sums of money to be used for specific purposes, that is, the purchases of the described automobiles. Such transactions differ from the situation where a customer pays in advance for an item to be delivered at a later date. If accepted, the testimony establishes that Richards' obligation was definite, specific, and limited. The jury could find that the money had been "intrusted" to the defendant for the "use of" the complaining witnesses. The statutory requirements then would have been met. Therefore we must reject defendant's contention that there was insufficient evidence as to Counts I, II, and III.

■ On retrial, however, the jury should be carefully instructed that a mere purchase and sale of goods in the absence of earmarked or escrowed funds is not an in-

trustment within the meaning of the statute. Although failure to furnish the item bargained for may establish civil liability, it is not generally a violation of the criminal law. A statute establishing criminal liability must be read strictly and should not be used to collect civil debts.

The defendant contradicted the testimony of the complaining witnesses and said that he did not agree to segregate the money·or use each customer's money specifically for the purchase of his car. Rather, Richards said that he simply intermingled receipts from the sale of other cars on his lot and paid for the specially ordered ones with general company funds. Such testimony, if believed, would establish that there was no "intrustment" within the meaning of the statutory term.

The judgment on Count IV will be vacated and judgment of acquittal will be entered. The judgments on Counts I, II, and III will be vacated and those counts will be remanded to the district court for a new trial.