NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2634
_____

ARCELIK A.S.,
                    Appellant

v.

EI DUPONT DE NEMOURS & CO
_____

On Appeal from a Decision of the United States
District Court for the District of Delaware
(D.C. No. 1-15-cv-00961)
District Judge: The Honorable Timothy B. Dyk[*]
_____

Argued
May 18, 2023
_____

Before: CHAGARES, *Chief Judge*, GREENAWAY, JR.,
and PHIPPS, *Circuit Judges*.

(Opinion Filed: June 7, 2023)
_____

OPINION[**]
_____

_____

[*] Sitting by designation from the United States Court of Appeals for the Federal Circuit.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Christopher F. Cannataro
April M. Ferraro
John M. Seaman **[ARGUED]**
Abrams & Bayliss
20 Montchanin Road
Suite 200
Wilmington, DE 19807

Christopher M. Ryan
Shearman & Sterling
401 9th Street NW
Suite 800
Washington, DC 20004

    *Attorneys for Appellant*

Brandon R. Harper
John A. Sensing **[ARGUED]**
Potter Anderson & Corroon
1313 N Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801

    *Attorneys for Appellee*

GREENAWAY, JR. *Circuit Judge*.

Arcelik A.S. (Arcelik) appeals the District Court's grant of summary judgment to E.I. DuPont de Nemours and Company (DuPont) on two claims: negligent manufacture and violation of the Delaware Consumer Fraud Act (DCFA), Del. Code Ann. tit. 6 §§ 2511–2527. After examining the appeal, we will affirm the District Court's decision to grant summary judgment on those claims.

## I. BACKGROUND

### A. Factual Background

Arcelik, a Turkish company producing household appliances, sells its products under various brands in over 100 countries. One of Arcelik's products is electric tumble dryers for drying clothes. In late 2012, Arcelik started receiving complaints from customers about its dryers catching fire. As a result, the company issued a voluntary recall in Europe, offering to replace or repair the affected dryers and compensate customers for any property damage caused by the fires. Arcelik claims that it faced significant costs and damages as a result.

Multiple independent investigations revealed that the fires were due to a defect in a flame-resistant material contained in a plastic product called "Zytel FR50," which was used in electrical capacitors inside the dryers. The flame-resistant material had higher-than-normal levels of certain substances, which caused the dryers to overheat and catch fire when exposed to high temperatures and humidity.

Defendant DuPont says that it did not manufacture or sell the defective lot of Zytel FR50 ("the defective Zytel"). Instead, various other companies contributed to its production and distribution. A Chinese company, Shandong Brother, produced the flame-resistant material, which contained certain contaminants that lessened its heat-resistant properties. Shandong Brother then sold it to DuPont China, a subsidiary of DuPont. DuPont China then used this material to make the defective Zytel plastic at its plant in Shenzhen, China. The defective Zytel was later sold to DuPont India, another DuPont subsidiary, which then sold it to a separate company, EPCOS India.

3

Either EPCOS India or a related German company, EPCOS AG, used the defective Zytel to make electrical capacitors that were sold to Arcelik. The defective Zytel was used to create a protective top disc for the capacitors, sealing them and providing a shield between certain components. EPCOS AG, following a 2009 contract with Arcelik, sold electrical capacitors containing the defective Zytel to Arcelik. These capacitors were then integrated into Arcelik's dryers.

### B. Procedural History

In 2015, Arcelik sued DuPont, the Delaware-based parent company of DuPont China and DuPont India, seeking damages tied to dryer fires caused by the defective Zytel, asserting claims under Delaware common law and the DCFA.

DuPont moved to dismiss the case, and the District Court obliged, dismissing five of Arcelik's six claims without prejudice, citing a failure to allege sufficient evidence of agency relationships between DuPont and its subsidiaries. Arcelik then filed an amended complaint with additional allegations and reasserted its claims. DuPont moved to dismiss once more, but the District Court granted only a partial dismissal. Ultimately, Arcelik was left with four claims: negligent manufacture, negligent misrepresentation, violation of the DCFA, and tortious interference with a contract.

After discovery, DuPont sought summary judgment on all four remaining claims, which the District Court granted.

## II. JURISDICTION

The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1332. The District Court issued a final order granting DuPont's motion for summary judgment, which Arcelik timely appealed.[1] We therefore have jurisdiction pursuant to 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

This appeal emerges from the District Court's grant of summary judgment. We review a grant of summary judgment de novo. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019). We may affirm the District Court's decision "on any grounds supported by the record, even if the court did not rely on those grounds." *MRL Dev. I, LLC v. Whitecap Inv. Corp.*, 823 F.3d 195, 202 (3d Cir. 2016) (internal quotation marks and citations omitted).

Summary judgment is appropriate when, construing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Sec'y U.S. Dep't of Lab. v. Kwasny*, 853 F.3d 87, 90 (3d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).

## IV. DISCUSSION

Arcelik raises two issues on appeal. First, Arcelik argues that the District Court erred in granting summary judgment on Arcelik's negligent manufacture claim because, viewing the facts in the light most favorable to Arcelik, (i) DuPont directly manufactured

---

[1] On appeal, Arcelik contests the grant of summary judgment on only two claims: negligent manufacture and violation of the DCFA.

the defective Zytel or (ii) DuPont China acted as DuPont's agent in manufacturing the defective Zytel. Second, Arcelik argues that the District Court erred in granting summary judgment on Arcelik's DCFA claim because it (i) introduced an unwarranted "duty to speak" requirement and incorrectly concluded that no reasonable juror could find that DuPont's conduct generated such a duty, (ii) incorrectly concluded that Arcelik "conceded" that its DCFA and negligent misrepresentation claims "rise and fall" together, and (iii) introduced an unwarranted requirement that Arcelik and DuPont have a "direct business or fiduciary relationship." We find each of these arguments lacking and will affirm the order below.

### A. Negligent Manufacture Claim

To make a negligent manufacture claim under Delaware law, a plaintiff must show that the defendant is responsible for the manufacture of the defective product. *See Nacci v. Volkswagen of Am.*, 325 A.2d 617, 619–20 (Del. Super. Ct. 1974) ("[A] manufacturer may be liable to those whom he should expect to be endangered by the probable use of the product." (citing Restatement (Second) of Torts § 395 cmt. i (Am. L. Inst. 1965))). This can be done by showing that the defendant either (i) directly manufactured the product or (ii) manufactured the product through an agent. Because Arcelik has failed to create a genuine dispute as to either theory of liability, we will affirm the District Court's grant of summary judgment on this claim.

### i. DuPont did not directly manufacture the defective Zytel.[2]

Arcelik has failed to present evidence that DuPont was involved in the actual manufacture of the defective Zytel.[3] When the District Court asked Arcelik "[w]here is your evidence that [DuPont] controls the actual manufacture [of the defective Zytel]?" Arcelik responded "[there is] nothing in the record about the actual manufacture of Zytel [by DuPont], broadly." App. 5786. Nor could Arcelik point to any evidence that DuPont

---

[2] DuPont has argued that Arcelik forfeited any argument that DuPont directly manufactured the defective Zytel. Not so. DuPont's error comes in its claim that Arcelik first raised this argument in its opposition to summary judgment. Had the argument been raised that late, it may well have been waived. *In re Bestwall LLC*, 47 F.4th 233, 242 (3d Cir. 2022) ("As a court of review, we generally decline to consider arguments that were not first presented to the court whose ruling is before us."); *see also Miranda-Rivera v. Toledo-Dávila*, 813 F.3d 64, 76 (1st Cir. 2016) ("Plaintiffs may not raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment." (internal quotation marks and citations omitted)). But this argument was raised far earlier. In Arcelik's Amended Complaint, under the heading "Claim Four Negligent Manufacture of a Defective Product" Arcelik alleges that "DuPont is engaged in the business of manufacturing, selling, or otherwise distributing Zytel, both *directly* and through global subsidiaries." App. 106 (emphasis added). This made clear that Arcelik was alleging "direct" manufacture in addition to advancing its agency theory. As such, the argument was not waived, and we will consider it.

[3] Existing precedent leaves unanswered what minimum amount of conduct by a parent company can constitute "manufacture." Arcelik draws our attention to two cases outside our Circuit that suggest the bar falls below total control, requiring only that the Defendant was "involved in" or "participated in" the manufacture of the product. *Gregus v. Stryker*, No. C 11-00404 RS, 2012 WL 13069924, at *2 (N.D. Cal. Apr. 20, 2012); *Standing v. Watson Pharms., Inc.*, No. CV09-0527 DOC(ANx), 2009 WL 842211, at *7 (C.D. Cal. Mar. 26, 2009)). It is worth noting that both cases diverge significantly from the present one. In *Gregus*, the record revealed that over a sixteen-year period, all of the relevant products' FDA registrations were made in the parent corporation's name. 2012 WL 13069924, at *2. And in *Standing*, the relevant product labels stated: "Manufactured by: [Defendant's Name], [City and State of Defendant's business]." 2009 WL 842211, at *7. No similar evidence exists in this case linking DuPont itself to the manufacture of the defective Zytel. Ultimately, we need not opine on the precise boundaries of what constitutes "manufacture" to find that the record here is insufficient under any standard.

was involved in the day-to-day manufacture of Zytel FR50. *See* App. 5785–86 (The Court: "But where is the evidence that DuPont controlled the day-to-day manufacture of this product?" Counsel for Arcelik: "It does not. [DuPont], itself, is not making those decisions.").[4]

Arcelik's alternative theory, that DuPont essentially manufactured the defective Zytel because (a) it controlled the quality control process for manufacturing Zytel FR50 generally and (b) control of quality control is tantamount to manufacturing fails because it is not supported by the record or the law.

As the District Court correctly noted, all Arcelik can point to is that DuPont "set the standard for the flame retardant," "signed off on the qualification of the third-party supplier," "required that the supplier provide certificates of analysis with each shipment showing compliance with the specification [of qualities for raw materials]," and "investigated problems that arose." App. 11 (citing App. 3803–05, 3374–75, 3459).

These actions, without more, fall short of the direct manufacturing claims that have survived summary judgment. *See supra* note 3. Arcelik provides no authority, and we have found none, showing that such limited involvement makes DuPont the overall manufacturer of the defective Zytel.

### ii. DuPont China is not DuPont's Agent.

---

[4] In its brief, Arcelik argues that this quote refers to DuPont China, not DuPont, and thus only stands for the proposition that DuPont China does not control the day-to-day operations of manufacturing Zytel FR50 at its factories. Arcelik's Br. at 36–37. Even if this is true, Arcelik nonetheless points to no evidence that DuPont was directly involved in the manufacture of the defective Zytel.

## 1. Agency Standard

As a general principle, parent corporations are not liable for the actions of a subsidiary. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). There are, however, two, limited exceptions to this general rule, only one of which is relevant here: agency liability.[5] *Id.*; *see also Phx. Can. Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1476–77 (3d Cir. 1988) (articulating the two standards). Under this exception, "one corporation— completely independent of a second corporation—may assume the role of the second corporation's agent during one or more specific transactions." *Phx. Can.*, 842 F.2d at 1477.

This agency relationship does not create blanket liability for all conduct of the agent—an agency relationship may exist for one subset of actions but not another. Instead, a plaintiff must show that the agency relationship is "relevant to the plaintiff's [specific] claim of wrongdoing." *Id.* Our analysis, thus, must focus on whether DuPont China acted as an agent of DuPont in the "specific transactions" in question: the manufacture of the defective Zytel. *Id.*

To determine whether an entity is an "agent," we look to both Delaware agency law and the general common law, which are "consistent." *Id.* at 1477 n.4. While the exact form may vary, an agency relationship always involves two entities (a "principal" and an "agent") "manifest[ing] assent" to one another that the agent shall act (1) "on the

---

[5] The other exception, referred to alternatively as "piercing the corporate veil" or the "alter ego" theory, requires "total domination" of the subsidiary such that it is "merely a shadow of the parent." *Phx. Can. Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1476–77 (3d Cir. 1988). Arcelik has not advanced this theory, and we need not address it.

principal's behalf" and (2) "subject to the principal's control." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 843 n.14 (Del. Ch. 2022) (quoting Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006)); *see also Jack Eckerd Corp. v. Dart Grp. Corp.*, 621 F. Supp. 725, 732 (D. Del. 1985) ("The 'touchstone' of the agency relationship is the principal's right to control the agent." (quoting *Gov't of V.I. v. Richards,* 618 F.2d 242, 244 (3d Cir. 1980) (citing Restatement (Second) of Agency § 14 (Am. L. Inst. 1958))))).

### 2. Application

Arcelik has presented no evidence that DuPont controlled DuPont China in manufacturing the defective Zytel or that DuPont China acted on DuPont's behalf in doing so. As such, the District Court correctly granted summary judgment on this theory.

What evidence Arcelik does cite falls broadly into six categories: DuPont setting global quality control standards for Zytel FR50, DuPont employees collaborating with employees of DuPont China, a general sense amongst DuPont executives that DuPont and its subsidiaries operate as a collective, global network, Dupont marketing all Zytel products (including those produced by subsidiaries like DuPont China) under the universal moniker "DuPont," DuPont qualifying and approving the suppliers used by DuPont China to manufacture the defective Zytel, and DuPont leading the response to customers and the public regarding the defective Zytel.

But none of these facts evidence DuPont's control over the manufacture of the defective Zytel or DuPont China's authority to act on DuPont's behalf. Collaborating across legal entities, informally seeing subsidiaries as part of a parent company's global network, and using a common moniker on products is exactly what one expects from a

10

parent-subsidiary relationship—a relationship that does not generally generate liability for the parent. *Bestfoods*, 524 U.S. at 61; *Martinez v. E.I. DuPont Nemours & Co., Inc.*, 82 A.3d 1, 15–16 (Del. Super. Ct. 2012) (citing *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968)). And while setting minimum quality standards, approving suppliers, and leading incident response shows an interest in the Zytel FR50 brand, we find no support for the contention that such limited involvement—looking at the actions individually or collectively—constitutes control.

Nor has Arcelik presented evidence that DuPont China manufactured the defective Zytel at DuPont's behest—either under DuPont's direction to fulfill obligations to third parties or with its imprimatur to enter into such agreements on DuPont's behalf. *See generally* App. 5793 (The Court: "Wait. But does it have the authority to alter the legal relations between the defendant and someone else?" Mr. Seaman for Arcelik: "I don't know that. I haven't thought of it that."); *id.* at 5794 (The Court: "But I mean is there any evidence that DuPont China is altering the legal relationships of the defendant with anybody else?" Mr. Seaman: "I don't think there's any evidence that DuPont China is doing much of anything on this record. All the evidence is as to what DuPont, itself, the defendant, has done. We don't have any testimony from any DuPont China entities.").

Finding no evidence of control or authority, we will affirm the District Court's grant of summary judgment on Arcelik's negligent manufacture claim.

## B. DCFA Claim

Section 2512 of the DCFA provides that "[t]he purpose of this subchapter shall be to protect consumers and legitimate business enterprises from unfair or deceptive

11

merchandising practices in the conduct of any trade of commerce in part or wholly within [the state of Delaware]." *Theis v. Viewsonic Corp.*, No. 12-1569-RGA, 2013 WL 1632677, at *2 (D. Del. Apr. 16, 2013) (first alteration in original). To state a claim under the DCFA, "a plaintiff must, at a minimum, allege with the required particularity that the defendant negligently omitted or concealed a material fact, and that the defendant 'intended that others rely on the omission or concealment.'" *Eames v. Nationwide Mut. Ins. Co.*, No. 04–1324–JJF–LPS, 2008 WL 4455743, at *13 (D. Del. Sept. 30, 2008), *aff'd*, 346 F. App'x 859 (3d Cir. 2009) (quoting *Stephenson v. Capano Dev. Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

Arcelik argues that DuPont is liable under the DCFA because DuPont omitted material information from its marketing materials and other communications concerning DuPont's deficient quality-control process for Zytel FR50. Namely, Arcelik alleges that "DuPont concealed by omission from its direct and indirect customers that it lacked the quality-control process to detect ionic contamination." Arcelik's Br. at 56. The District Court rejected that argument and held that Arcelik did not properly make out a DCFA claim because Arcelik failed to provide proof that there was an omission in the face of a duty to speak. We agree.

Arcelik raises three arguments in response, each of which fails.

First, Arcelik contends the District Court erred by importing a "duty to speak" into the DCFA. This is not the case. That a failure to reveal information only generates liability in the presence of a duty to speak is common sense. Without such a requirement, the DCFA would create unbounded liability for words unspoken and actors uninvolved in

12

the manufacturing process. The law is much more sensible than that, requiring only that a company reveal specific information when—through some relationship, agreement, representation, or principle of law—it has a duty to do so.

As the District Court properly noted, we can look to the Delaware common law's discussion of negligent misrepresentation to instruct us in this arena. While there are differences between the common law and the DCFA, *Teamsters Loc. 237 Welfare Fund v. AstraZeneca Pharms. LP*, 136 A.3d 688, 693 (Del. 2016) (discussing these differences), none of these distinctions are relevant here. The District Court was correct to interpret the DCFA "in light of established common law definitions and concepts of fraud and deceit." *Id.* (quoting *Stephenson*, 462 A.2d at 1074).

Under the common law, plaintiffs must show "a particular duty to provide accurate information." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch. 2003). That same principle applies here. Accordingly, the District Court was correct: under the DCFA—just as with the common law—omitting a material fact must occur "in the face of a duty to speak." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987).

On this record, no reasonable juror could conclude that DuPont possessed such a duty. DuPont did not represent that all Zytel FR50, produced by all actors on the globe, would be safe. Nor did it represent that the specific, defective batches produced by DuPont China would be safe. Neither DuPont's general actions (creating general informational materials and promulgating quality standards for Zytel FR50) nor specific actions (approving suppliers for DuPont China or learning of and investigating defects in specific batches of DuPont China's products) generate such a duty.

13

Second, Arcelik argues that the District Court made an incorrect factual finding: that Arcelik's counsel conceded that Arcelik's negligent misrepresentation and the DCFA claims rise and fall together. Arcelik is correct in one sense: the District Court misattributed the statement in question, and Arcelik did not concede this point. Yet, this error does not generate the force Arcelik believes it does. Concession or not, the District Court's legal conclusion—that the claims rise and fall together under these circumstances—is correct.

Under Delaware law, negligent misrepresentation and DCFA claims generally rise and fall together because "[i]f a plaintiff cannot at least prove the existence of a negligent misrepresentation, the plaintiff cannot make out a claim under the DCFA." *Washington v. William H. Porter, Inc.*, No. N17C-01-170 EMD, 2017 WL 3098210, at *5 (Del. Super. Ct. July 20, 2017). "Although there are material distinctions in the standards required to prove the two claims,"[6] as the District Court correctly explained, "both require proof that there was an omission in the face of a duty to speak." App. 17. Because Arcelik has failed to present proof that DuPont had a duty to speak, the claims do rise and fall together.

---

[6] The District Court explained the difference between the two claims well:
"The statute [] depart[s] from the common law in the following ways: (1) 'a negligent misrepresentation is sufficient to violate the statute,' (2) a violation of the statute 'is committed regardless of actual reliance by the plaintiff,' and (3) the plaintiff need not show 'intent [by the defendant] to induce action or inaction by the plaintiff.'" *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 437 (D. Del. 2006) (quoting *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. Super. Ct. 1983)). Only the latter two differences distinguish the statute from common law negligent misrepresentation.
App. 17. n.14 (alterations in original).

14

Third, Arcelik argues that the District Court manufactured an unprecedented DCFA requirement: that claims may only be asserted if the buyer has a *direct* relationship with the seller. Here again, Arcelik is correct in one respect: the District Court incorrectly suggested that a "direct business or fiduciary relationship between DuPont and Arcelik" was necessary. App. 19. While a direct relationship may be sufficient to establish a duty to speak, it is not necessary. The DCFA creates a cause of action for "any victim of a violation," not just those in direct relation to the violator. Del. Code Ann. tit. 6 § 2525(a).

But the District Court did not end its analysis there, going on to write that Arcelik had also failed to produce evidence showing a partial disclosure by DuPont, which could also trigger "a duty to disclose its purportedly lacking quality control processes." *Id.* That independent basis is enough for us to affirm.[7] *See MRL Dev. I, LLC*, 823 F.3d at 202 (We may affirm a district court's decision "on any grounds supported by the record, even if the court did not rely on those grounds" (internal quotation marks and citations omitted)).

## V. CONCLUSION

The District Court correctly granted summary judgment in favor of DuPont. Arcelik failed to prove that DuPont or its agent manufactured the defective Zytel or that DuPont made any misstatements or omissions in the face of a duty to speak. Accordingly, we will affirm the District Court's grant of summary judgment to DuPont.

---

[7] Arcelik infuses its second argument with the claim that the District Court violated the law-of-the-case doctrine by stating that there must be a direct relationship between seller and victim to make a DCFA claim. Even if such a violation occurred, we are free to review and affirm on any grounds supported by the record. *See MRL Dev. I, LLC,* 823 F.3d at 202.